# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR, Bankruptcy Trustee, ET AL. | § § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-160 |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, ET AL. | § § § | |

## MEMORANDUM OPINION & ORDER

This case involves a dispute between a healthcare provider, Victory Medical Centers, and an insurer, Blue Cross and Blue Shield.[1] Victory Medical asserts that BCBS underpaid or failed to pay insurance claims for healthcare services, resulting in millions of dollars in losses, and that BCBS committed other unlawful acts in violation of duties and obligations owed to Victory Medical and its former patients.

Before the Court are several motions to dismiss Victory Medical's First Amended Complaint, (Dkt. #216–18, #220–22), and a motion to amend the complaint should the Court grant the motions to dismiss, (Dkt. #240). The Court, having

---

[1] Victory Medical Centers includes Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, Victory Medical Center Beaumont, LP, and Victory Surgical Hospital East Houston, LP, as well as their parent company, Victory Parent Company, LLC. The Plaintiffs, however, are Neil Gilmour, as bankruptcy trustee of several Victory Medical centers, as explained below, and Victory Medical Center Beaumont, LP and Victory Surgical Hospital East Houston, LP in their own name.

BCBS includes the Defendants listed in the First Amended Complaint, (Dkt. #145), excluding Blue Cross Blue Shield Association, Blue Cross and Blue Shield of Arizona, Inc., Blue Cross of Idaho Health Service, Inc., Blue Cross of Idaho Care Plus, Inc., Hallmark Services Corporation, Blue Cross Blue Shield of Michigan, Lifetime Healthcare, Inc., and Noridian Mutual Insurance Company due to subsequent dismissal.

For ease of reference, Plaintiffs will be collectively referred to as "Victory Medical," unless explicitly stated otherwise. Likewise, the Defendants will be collectively referred to as "BCBS" or "Defendants," unless explicitly stated otherwise.

reviewed the parties' submissions, the record, and the applicable law, **GRANTS in part** the motions to dismiss and **DENIES** the motion to amend.

## I. Background

Victory Medical is a group of acute-care hospitals that provide a broad range of healthcare services.[2] Victory Medical provided healthcare services to thousands of patients, including many who were insured under plans issued or administered by BCBS. Prior to providing healthcare services, Victory Medical required all of its patients to sign various forms. One such form purported to require assignment of any insurance benefits and causes of action available to the insured patient, including those against the patient's insurer, in this case BCBS. Additionally, because Victory Medical does not have access to its patients' insurance plans, Victory Medical alleges that it contacted a BCBS representative to ascertain information about a patient's plan, including confirmation of coverage and determination of the deductible and available out-of-network benefits for any healthcare services provided. Upon assignment and confirmation of coverage, Victory Medical treated its patients. After treatment, Victory Medical alleges that it properly filed insurance-benefits claims with BCBS as an assignee of its patients' benefits under their insurance plans.

At issue in this case are 1,896 insurance-benefits claims on BCBS for healthcare services provided by Victory Medical to approximately 1,500 of its BCBS-insured former patients. Victory Medical alleges that BCBS administered the

---

[2] The following facts come from Victory Medical's allegations in its First Amended Complaint. (Dkt. #145). The facts are unopposed, unless indicated otherwise.

underlying insurance plans at issue and that BCBS Texas provided coverage-verification and claim-determination services for the plans. In that capacity, Victory Medical alleges that BCBS acted as a claim administrator, a plan administrator, and a fiduciary. Victory Medical asserts numerous causes of action against BCBS under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and Texas law[3] for alleged underpayment or nonpayment of the insurance claims. Specifically, Victory Medical alleges that, for $116,376,352.79 in billed healthcare services, BCBS reimbursed only $12,481,839.08, and now seeks $43,162,553.66 in unpaid balances. Victory Medical also asserts claims for related wrongdoing throughout the claim-administration process, including oral misrepresentation of the terms of insurance plans, failure to adhere to procedural requirements during insurance-claim administration, and self-dealing as a result of those actions.

Victory Medical asserts the following ERISA claims: recovery of insurance benefits, 29 U.S.C § 1132(a)(1)(B), denial of full and fair review of insurance claims, *id.* § 1133, breach of fiduciary duty, *id.* § 1104(a)(1), and failure to provide plan information, *id.* § 1132(c)(1). And it asserts the following state-law claims: breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, negligent misrepresentation, violation of the Texas Insurance Code, unjust enrichment, and money had and received. Victory Medical also seeks attorneys' fees under ERISA and Texas law. In support of its claims, Victory Medical relies on several Summary Plan Descriptions ("SPDs"), which provide a summary of key terms

---

[3] It is not in dispute that Texas law governs Victory Medical's state-law claims.

of an insurance plan, and exhibits providing information regarding each insurance-benefit claim at issue.

BCBS has moved to dismiss all of Victory Medical's claims. Before detailing the current set of dismissal motions, a brief summary of the case's history prior to arriving at this Court is necessary. The case was filed in the Western District of Texas on June 11, 2017. BCBS responded with a set of motions for dismissal, transfer, or more definite statement,[4] prompting extensive briefing.[5] The district court accepted the magistrate judge's report and recommendation on two of BCBS's motions, denying Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction, and dismissing without prejudice Rule 12(b)(3) motions to dismiss for improper venue and Rule 12(b)(6) motions to dismiss for failure to state a claim.[6] The district court allowed Victory Medical to file an amended complaint to address BCBS's improper-venue arguments and to cure any other potential deficiencies.

Victory Medical filed its first amended complaint, specifying its alleged basis for venue in the Western District of Texas and including additional factual allegations.[7] BCBS filed another set of motions to dismiss or transfer,[8] and both

---

[4] (Dkt. #23, #25, #60, #61, #63–65, #98) (dismissal motions).

[5] (Dkt. #126) (Victory Medical's omnibus response and motion for leave to amend); (Dkt. #127–29, #131, #134) (Defendants' replies in support of the motions to dismiss or change venue); (Dkt. #133) (Victory Medical's omnibus sur-reply).

[6] (Dkt. #141); *see also* (Dkt. #136) (report and recommendation).

[7] (Dkt. #145).

[8] (Dkt. #149, #152–53, #158–59, #161, #179, #181–82). Upon filing the first amended complaint, the district court denied the motions attacking the original complaint as moot. (Dkt. #146).

parties filed responsive briefing.[9] The district court prioritized the threshold issue of venue, setting aside challenges to the legal sufficiency of the claims and other related challenges. The court, having found that the actions ultimately giving rise to the suit were taken by Defendant BCBS Texas in Collin County, determined that venue was proper in the Eastern District of Texas and transferred the case to this Court.[10]

Upon transfer, BCBS reurged its dismissal arguments, filing another set of motions to dismiss, which are now before the Court.[11] Victory Medical filed a response and a motion for leave to amend should the Court grant dismissal.[12] The parties provided additional briefing in support of their respective positions.[13] BCBS moves for dismissal of Victory Medical's claims due to lack of standing, ERISA preemption, and failure to state a claim. The Court addresses each argument in turn.

## II. STANDING

BCBS challenges Victory Medical's standing to bring certain claims under Federal Rule of Civil Procedure 12(b)(1), asserting the following arguments. First,

---

[9] (Dkt. #178) (Victory Medical's omnibus response); (Dkt. #183–87) (Defendants' replies in support of the motions to dismiss or change venue); (Dkt. #190) (Victory Medical's omnibus sur-reply).

[10] (Dkt. #191).

[11] (Dkt. #216–18, #220–22). At the instruction of the Western District court, the motions designate a "lead" motion, (Dkt. #217), which the other motions incorporate and supplement as needed.

[12] (Dkt. #236) (Victory Medical's omnibus response); (Dkt. #240) (Victory Medical's motion for leave to amend).

[13] (Dkt. #242) (Defendants' response in opposition to motion for leave to amend); (Dkt. #244–45, #248) (Defendants' replies in support of the motions to dismiss); (Dkt. #253) (Victory Medical's omnibus sur-reply).

Victory Medical cannot bring claims made on Victory Medical Center Beaumont, LP and Victory Surgical Hospital East Houston, LP's accounts receivable because they were not preserved in Victory Medical's prior bankruptcy proceeding. Second, anti-assignment provisions within many of the insurance policies at issue preclude Victory Medical's standing to assert claims as an assignee of its former patients. Third, anti-assignment provisions aside, Texas law prohibits assignment of a claim under the Texas Insurance Code. Fourth, Victory Medical cannot bring its claim for insurance benefits under ERISA because it failed to exhaust administrative remedies. And fifth, Victory Medical's claims are barred by applicable statutes of limitations.

Victory Medical disputes that any of these arguments challenge its standing. Instead, it contends that the arguments are all affirmative defenses that the Court need not address at the dismissal stage. Victory Medical is correct, in part. The ERISA exhaustion requirement and the statutes of limitations invoked by BCBS are affirmative defenses properly addressed under Rule 12(b)(6), not Rule 12(b)(1), if at all at the dismissal stage. *See United States v. Lewis*, 774 F.3d 837, 845 (5th Cir. 2014) (per curiam) (statute of limitations); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308–09 (5th Cir. 2008) (ERISA exhaustion). The remaining arguments, however, implicate standing. *See In re United Operating, LLC*, 540 F.3d 351, 354 (5th Cir. 2008) (preservation of claims after bankruptcy); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) (assignment of ERISA claims);[14] *Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 5:16-

---

[14] Victory Medical further contends that, even if assignment of ERISA claims is a matter of standing, it implicates prudential standing, not Article III standing, thereby

CV-5, 2016 WL 5942327, at *6 (W.D. Tex. Oct. 12, 2016) (Lamberth, J. sitting by designation) (nonassignable claims). The Court will address the standing issues before turning to the merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

## A. Legal Standards

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal question or diversity jurisdiction. U.S. CONST., art. III, § 2, cl.1; 28 U.S.C. §§ 1331–32. Courts have "an independent obligation to determine whether subject-matter jurisdiction exists . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). However, a defendant may also challenge the court's subject-matter jurisdiction by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

---

rendering it nonjurisdictional. The Fifth Circuit has recently rejected this argument. *See Cell Sci. Sys. Corp. v. La. Health Serv.*, No. 18-31034, 2020 WL 1285033, at *2 (5th Cir. Mar. 17, 2020) (per curiam) (unpublished) (explaining that the issue implicates Article III standing under Fifth Circuit precedent and that recent Supreme Court jurisprudence clarifying certain aspects of prudential standing does not change this result).

A Rule 12(b)(1) challenge to the court's subject-matter jurisdiction to hear a claim may be either "facial" or "factual." A facial challenge attacks the sufficiency of the facts pleaded in the complaint. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When a defendant contests the facial sufficiency of the facts pleaded in the complaint to confer jurisdiction, those facts are entitled to a presumption of truth. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (noting that the court "must consider the allegations in the plaintiff's complaint as true" if a Rule 12(b)(1) motion is based on the face of the complaint). However, a legal conclusion "couched as a factual allegation" is not entitled to the same presumption of truth. *Alfred v. Harris Cty. Hosp. Dist.*, 666 F. App'x 349, 352 (5th Cir. 2016) (quoting *Machete Prods., LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (per curiam) (unpublished)). If the facts as pleaded are sufficient to confer jurisdiction, then a Rule 12(b)(1) motion will not succeed. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

A factual challenge attacks the accuracy of the facts underpinning the claimed federal jurisdiction. Because such a challenge disputes the very "existence of subject matter jurisdiction in fact, irrespective of the pleadings," a court may consider "matters outside the pleadings, such as testimony and affidavits[.]" *Menchaca*, 613 F.2d at 511; *accord Cell Sci. Sys. Corp. v. La. Health Serv.*, No. 18-31034, 2020 WL 1285033, at *3 (5th Cir. Mar. 17, 2020) ("[T]he court may take material outside of the pleadings, such as affidavits, testimony, and other evidentiary materials, into account when evaluating the issue of jurisdiction.") (citing *Irwin v. Veterans Admin.*,

874 F.2d 1092, 1096 (5th Cir. 1989)). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence and may meet that burden by "submit[ting] facts through some evidentiary method." *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (internal quotation marks omitted).

## B. Claims on Victory Medical Center Beaumont, LP and Victory Surgical Hospital East Houston, LP's Accounts Receivable

Five medical centers within the Victory Medical network and Victory Medical's parent company filed for Chapter 11 bankruptcy prior to the initiation of this case.[15] The parties dispute whether the bankruptcy's reorganization plan forecloses Victory Medical's standing to bring claims on Victory Medical Center Beaumont, LP ("Beaumont") and Victory Surgical Hospital East Houston, LP's ("East Houston") accounts receivable. BCBS argues that Victory Medical lacks standing because the accounts were owned by the bankruptcy estate and claims on the accounts were not adequately preserved for post-bankruptcy litigation by the reorganization plan.

Victory Medical disputes BCBS's contention that the accounts were owned by the bankruptcy estate. Instead, Victory Medical asserts that Beaumont and East Houston, nondebtors not subject to the bankruptcy, owned the accounts. The bankruptcy debtors merely had partial equity ownership of those medical centers, not full ownership of their accounts receivable, placing the accounts outside the

---

[15] Specifically, Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, and Victory Parent Company, LLC filed for bankruptcy in the Northern District of Texas. *See In re Victory Medical Center Mid-Cities, LP*, 4:15-BK-42373 (Bankr. N.D. Tex. June 12, 2015).

bankruptcy estate and the ambit of the reorganization plan's restriction on future claims. Because BCBS "has challenged the underlying facts supporting the complaint," its challenge is factual. *See Cell Sci.*, 2020 WL 1285033, at *3.

The Court must first determine whether the accounts were a part of the bankruptcy estate. Upon initiation of a Chapter 11 bankruptcy filing, a bankruptcy estate is formed to centralize "all" debtor property, "wherever located and by whomever held[.]" 11 U.S.C. § 541; *accord In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case[,]" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. §§ 541(a)(1), (7); *see also* 4 WILLIAM L. NORTON III, NORTON ON BANKRUPTCY LAW AND PRACTICE § 61:1 (3d ed. 2020) ("In short, Code § 541's operative scheme may be summarized as follows: Any and all property rights of the debtor at the time of the commencement of the case become part of the estate, and remain property of the estate unless specifically removed from the estate.").

The bankruptcy record indicates that Beaumont and East Houston's accounts receivable were a part of the bankruptcy estate. Victory Parent, a bankruptcy debtor, filed several "schedules" as a part of the bankruptcy proceeding's disclosure requirements. "Schedule B" directs a bankruptcy debtor to "list all personal property of the debtor of whatever kind." *See In re Victory Medical Center Mid-Cities, LP*, 4:15-BK-42384 (Bankr. N.D. Tex. June 12, 2015) (Dkt. #18 at 3). In the section entitled "accounts receivable," Victory Parent listed ownership of several "affiliates

receivable," which specifically included East Houston and Beaumont's accounts receivable and the respective balances due. *Id.* at 8.

Victory Medical does not directly contest the validity of that disclosure. Instead, Victory Medical says that BCBS has confused Victory Parent's economic interest in Beaumont and East Houston themselves for ownership of their accounts receivable. The evidence does not support Victory Medical's view. Schedule B provides separate sections for disclosing ownership of accounts receivable and ownership of interests in businesses. *Id.* at 6. Victory Parent disclosed its ownership of Beaumont and East Houston's accounts receivable in the former, *id.*, then disclosed its ownership interest in the medical centers themselves in the latter, *id.* at 7. BCBS grounds its arguments on the accounts-receivable disclosure. Victory Medical attempts to conflate the two by suggesting that Victory Medical's ownership of the accounts receivable is merely a by-product of its equity ownership of Beaumont and East Houston. As explained, that position is belied by the disclosures, and Victory Medical offers no other evidence or persuasive authority to support its view.[16]

The Court must next determine whether claims on Beaumont and East Houston's accounts receivable were preserved in the bankruptcy's reorganization plan. "For a debtor to preserve a claim, the [reorganization] plan must expressly retain the right to pursue such actions." *United Operating*, 540 F.3d at 355 (internal

---

[16] Victory Medical also mistakenly believes the Court should not consider bankruptcy filings. But there are no issues with considering such filings because BCBS made a factual attack on this Court's subject-matter jurisdiction, enabling the Court to "take material outside of the pleadings . . . into account when evaluating the issue of jurisdiction." *Cell Sci.*, 2020 WL 1285033, at *3 (citing *Irwin*, 874 F.2d at 1096).

quotation marks omitted). The plan's preservation language must be "specific and unequivocal." *Id.* (internal quotation marks omitted). Absent preservation in the plan, "the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *Id.* When determining this issue, "courts regularly apply principles of contract interpretation to clarify the meaning of the language in reorganization plans." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012).

The language of the reorganization plan does not include a "specific and unequivocal" reservation of claims on the nondebtors' accounts receivable. The plan does reserve claims for "[c]ollection of accounts receivable and any and all related claims cognizable under applicable law" against "Blue Cross Blue Shield" and "each of its affiliates." *In re Victory Medical*, 4:15-BK-42373 (Dkt. #969 at 82). The plan then "expressly incorporates by reference" the First Amended Disclosure Statement's language on claims to provide "a full understanding of [the reserved claims.]" *Id.* The disclosure statement limits the scope of accounts receivable claims against BCBS to those "for accounts receivables or any other indebtedness owed whatsoever to one or more Debtor as a result of the provision of healthcare *provided by one or more Debtor*." *In re Victory Medical*, 4:15-BK-42373 (Dkt. #777 at 53) (emphasis added). Although the bankruptcy debtors owned the nondebtors' accounts receivable, the debtors did not provide the healthcare services underlying the accounts—the nondebtors did. Therefore, in accordance with the language of the reorganization plan and the disclosure statement, Victory Medical has no standing to bring claims on the nondebtors' accounts receivable because the language of the reorganization plan

includes only claims for accounts resulting from the debtors' healthcare services, not the nondebtors' services.

To hold otherwise would yield the unacceptable result of rendering meaningless the narrowing language "as a result of the provision of healthcare provided by one or more Debtor," which the reorganization plan specifically incorporated to clarify the scope of the preserved claims. *See, e.g.*, *In re FFS Data, Inc.*, 776 F.3d 1299, 1305 (11th Cir. 2015) (noting that courts apply "principles of contract interpretation to interpret a confirmed plan of reorganization," including the principle that "a document should be read to give effect to all its provisions . . .") (citing *Official Creditors Comm. v. Stratford of Tex., Inc.* (*In re Stratford of Tex., Inc.*), 635 F.2d 365, 368 (5th Cir. 1981)). Moreover, Victory Medical provides no competing interpretation of this language, aside from its unsuccessful attempt to equate equity ownership and accounts receivable ownership.[17] For these reasons, Victory Medical

---

[17] Victory Medical also contends that BCBS cannot challenge Victory Medical's standing to bring the claims because BCBS was not a bankruptcy creditor. The argument is unpersuasive. It is fundamental that there is no justiciable case or controversy over which a court may exercise its judicial power without standing to sue. *See Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). The Court is aware, however, of case law from bankruptcy courts in this circuit suggesting that parties who were not creditors of bankruptcy debtors may not raise the issue of standing to assert unpreserved claims in post-bankruptcy litigation. *See In re Odin Demolition & Asset Recovery, LLC*, 544 B.R. 615, 630–32 (Bankr. S.D. Tex. 2016); *In re Gulf States Long Term Acute Care of Covington, LLC*, 487 B.R. 713, 723–26 (Bankr. E.D. La. 2013). Those cases distinguish established Fifth Circuit precedent requiring a "specific and unequivocal" reservation of claims in a reorganization plan to establish standing by noting that the Fifth Circuit's cases involved debtors suing bankruptcy creditors, not noncreditors. Even so, Fifth Circuit precedent does not obviously support the proposition that noncreditors are therefore barred from challenging standing to bring a claim that may not have survived a bankruptcy proceeding. Instead, the Fifth Circuit seems to articulate a broader view of claim preservation in a reorganization plan: "[t]o facilitate [a] timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of *any* claim it wishes to pursue after confirmation"—not just claims against the creditors. *United Operating*, 540 F.3d

has failed to prove its standing to bring insurance-benefits claims predicated on Victory Medical Center Beaumont, LP and Victory Surgical Hospital East Houston, LP's accounts receivable. Such claims are dismissed for lack of standing.

## C. Assignment and Anti-Assignment

Victory Medical asserts several claims as an assignee of the claims available to its former patients.[18] BCBS contests Victory Medical's standing as an assignee to bring ERISA claims, noting healthcare providers' lack of independent standing and asserting anti-assignment provisions in many of the insurance plans at issue. Some of the dismissal motions include anti-assignment provisions from the insurance plans and affidavits concerning those provisions. Victory Medical responds that, upon information and belief, most of the plans do not contain an anti-assignment provision. And, for plans with such a provision, Victory Medical argues that BCBS is barred from asserting the provision due to waiver, estoppel, or ratification based on its alleged failure to invoke the provision during the claim-administration process. Because BCBS has submitted "affidavits, testimony, or other evidentiary materials[,]" its standing challenge is factual. *See Superior MRI*, 778 F.3d at 504.

ERISA restricts standing to bring claims under certain of its provisions, to the exclusion of healthcare providers. *See* 29 U.S.C. § 1132(a)(1) ("participant or

---

at 355 (emphasis added); *accord MPF Holdings*, 701 F.3d at 453–54. And this Court is unaware of any Fifth Circuit case drawing the creditor–noncreditor distinction in this context. For these reasons, unless and until the Fifth Circuit adopts the distinction, this Court declines to do so.

[18] Specifically, Victory Medical asserts the following claims as an assignee: ERISA benefits, denial of full and fair review, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and ERISA penalties.

beneficiary"); *id.* § 1132(a)(3) ("participant, beneficiary, or fiduciary"); *id.* § 1132(c)(1) ("participant or beneficiary"); *see also Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019) ("ERISA does not supply the [healthcare] provider with a basis for bringing its claim directly[.]"). However, "a health care provider may possess standing under ERISA by virtue of a valid assignment." *Dallas Cty. Hosp. Dist. v. Assocs.' Health & Welfare Plan*, 293 F.3d 282, 285 (5th Cir. 2002). Assignment of certain claims, however, must be "express and knowing" to be valid. *See Tex. Life, Acc. Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997) ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim is valid."); *see also Hous. Home Dialysis, LP v. Blue Cross & Blue Shield of Tex.*, No. CV H-17-2095, 2018 WL 2562692, at *3 (S.D. Tex. June 4, 2018) (extending the "express and knowing" requirement to all nonbenefits ERISA claims and collecting cases doing the same). Further, assignment is invalid "when an ERISA plan contains a valid anti-assignment provision[.]" *Dialysis Newco*, 938 F.3d at 251.

Victory Medical's standing to bring its ERISA claims is critical to this case because a lack of standing would deprive the Court of subject-matter jurisdiction. But the Court cannot fully or efficiently adjudicate the standing issue on the current record. As an initial matter, it is unclear whether BCBS is challenging the validity and scope of Victory Medical's assignment provisions or is limiting its challenge only to those assignments subject to an anti-assignment provision. That issue aside, the record is underdeveloped regarding the anti-assignment provisions. More BCBS

Defendants may raise the issue, and those Defendants who already have admit that they may contest additional plans with applicable anti-assignment provisions in the future. *See* (Dkt. #216 at 4–5 n.3) (admitting that the anti-assignment provisions are limited to only those that this group of Defendants "have been able to locate based on the allegations made by Plaintiffs at this time[,]" and that "[t]here may be additional benefit plans at issue that also contain anti-assignment provisions"). Further, reiterating its inability to obtain the underlying plan documents at issue, Victory Medical has requested leave to conduct jurisdictional discovery prior to adjudication of this issue. (Dkt. #253 at 17 n.49).

For these reasons, the interests of judicial economy and efficient resolution are best served by deferring challenges to the validity and scope of Victory Medical's assignment provisions and to the effect of BCBS's anti-assignment provision until the summary-judgment stage. With the benefit of discovery, the parties can fully present their positions and avoid piecemeal resolution. Further, because a factual challenge to standing "may occur at any stage of the proceedings," there is no waiver concern. *See Menchaca*, 613 F.2d at 511 (citing *Mortensen v. First Fed. Savs. & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977)).

This approach is consistent with the approach taken by other courts under similar circumstances. *See, e.g.*, *Hous. Home v. Blue Cross & Blue Shield of Tex.*, No. CV H-17-2095, 2018 WL 5249996, at *7 (S.D. Tex. Oct. 22, 2018) (denying motion to dismiss without prejudice regarding the estoppel issue "so that the parties may raise this issue at summary judgment or at trial, on a more complete record"); *Grand*

*Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. H-15-0297, 2015 WL 3756492, at *2 (S.D. Tex. June 16, 2015) ("It is necessary and appropriate in this case to consider the effect of the anti-assignment clauses and the waiver and estoppel issues on a Motion for Summary Judgment when the plans, the assignments, and evidence regarding the parties' dealings are in the record."). Dismissal of Victory Medical's ERISA claims for lack of standing as an assignee of its former patients is therefore denied without prejudice so that the parties may complete appropriate discovery and fully present their respective positions.

**D. Texas Insurance Code**

Victory Medical asserts a claim for violation of the Texas Insurance Code. The claim arises from BCBS agents allegedly misrepresenting insurance-coverage and reimbursement-rate information to Victory Medical prior to providing healthcare services to its BCBS-insured patients. Victory Medical asserts standing to bring the claim both independently and as an assignee of its patients' claims. BCBS contends that Victory Medical does not have standing to bring the claim because it lacks independent standing and the claim is unassignable under Texas law.

As an initial matter, Victory Medical concedes that it lacks standing to assert this claim as to self-funded benefit plans because they are not "engaged in the business of insurance" under the Texas Insurance Code. (Dkt. #236 at 39 n.82). Accordingly, Victory Medical's claim under the Texas Insurance Code is dismissed as to self-funded benefit plans.[19]

---

[19] BCBS also argues that Victory Medical concedes standing as an assignee. Although Victory Medical does not rebut this characterization in its subsequent responsive briefing,

Victory Medical lacks standing as an assignee because claims under section 541 of the Texas Insurance Code may not be assigned. Although the Texas Supreme Court has not directly addressed the issue, it has held that Texas Deceptive Trade Practice Act claims are unassignable because such claims are fundamentally "personal and punitive." *PPG Indus., Inc. v. JMB/Hous. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 (Tex. 2004). Drawing upon the Texas Supreme Court's reasoning in *PPG Industries*, several federal courts have held that claims under section 541 of the Texas Insurance Code are also "personal and punitive" and likewise unassignable. *See, e.g.*, *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, No. A-10-CA-362, 2011 WL 9879170, at *8–*9 (W.D. Tex. Apr. 27, 2011) (collecting cases), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012); *see also Montoya*, 2016 WL 5942327, at *6. Several Texas intermediate courts of appeal have agreed with the federal courts' interpretation of Texas law. *See Goin v. Crump*, No. 05-18-307-CV, 2020 WL 90919, at *15–*16 (Tex. App.—Dallas Jan. 8, 2020, no pet.); *Lee v. Rogers Agency*, 517 S.W.3d 137, 146 n.3 (Tex. App.—Texarkana 2016, pet. denied). Therefore, under Texas law, Victory Medical lacks standing as an assignee to bring a claim under section 541 of the Texas Insurance Code.

Victory Medical does, however, have independent standing to bring its claim. BCBS disagrees, pointing to *Allstate Insurance Co. v. Watson*, 876 S.W.2d 145 (Tex.

---

the Court does not interpret Victory Medical's briefing as a concession. Victory Medical stated, "Defendants say that plaintiffs' insurance code claims are preempted. But *even if* that were so for insurance claims asserted as assigned claim, it is not so for the direct claims asserted here . . ." (Dkt. #236 at 39) (emphasis added and removed). That is an alternative argument, not a concession.

1994). In *Watson*, the Texas Supreme Court determined that a third party to an insurance contract did not have independent standing to sue an insurer under the Texas Insurance Code. *Id.* at 150. That determination turned on the fact that a provision of standing in that case "would undermine the duties insurers owe to their insureds" by burdening the insurer with "conflicting duties[.]" *Id.* But *Watson* is distinguishable because no such conflicting duty would arise here.

The Texas Supreme Court has so held under analogous circumstances. In *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000), the Court reiterated *Watson*'s conflicting-duty analysis but determined that "[n]o such conflict" existed for an Insurance Code claim brought by an insurer's agent against the insurer for alleged misrepresentation of plan terms that exposed the agent to liability. *Id.* at 384. Specifically, "the duty owed by the insurer to the insured is in harmony with the duty owed to the agent not to misrepresent insurance policy terms." *Id.* As the Texas Supreme Court explained, "[t]he goal of comprehensively regulating insurance practices is furthered by giving [the agent] standing because it strengthens the insurer's incentive to avoid passing misleading information to the public through its agent." *Id.* So too here, as standing for the healthcare provider who relied on the alleged misrepresentations would likewise deter such behavior and not create any conflicting duties for the insurer. In short, "the rationale behind *Watson* [does] not apply to [Victory Medical's] claims." *See id.* This determination is consistent with the large body of federal courts that have allowed healthcare providers to pursue a claim for violation of the Texas Insurance Code on the same grounds. *See, e.g.*, *Rapid Tox*

*Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632, 2017 WL 3658841, at *13–*14 (N.D. Tex. Aug. 24, 2017). For these reasons, Victory Medical has independent standing to pursue its claim under the Texas Insurance Code.

### III. ERISA PREEMPTION

BCBS raises preemption arguments against Victory Medical's state-law claims for negligent misrepresentation, promissory estoppel, breach of the duty of good faith and fair dealing, unjust enrichment, money had and received, and violation of the Texas Insurance Code as to ERISA-governed plans. BCBS contends that the claims are subject to both complete and conflict preemption under ERISA because the claims essentially seek to recover benefits under the terms of the ERISA plans. Victory Medical responds by clarifying the nature of its claims. The claims for promissory estoppel, negligent misrepresentation, and violation of the Texas Insurance Code arise from alleged misrepresentations made by BCBS agents about the insurance coverage and benefits available to Victory Medical's BCBS-insured former patients. Because the claims arise exclusively from the alleged misrepresentations, not on the underlying plan terms, Victory Medical argues that they are not subject to preemption. Additionally, Victory Medical points out that its claim for breach of the duty of good faith and fair dealing is asserted only as to non-ERISA plans, avoiding any preemption issue.

### A. Legal Standards

ERISA involves two types of preemption: complete preemption and conflict preemption. A cause of action under state law is subject to complete preemption when

it could have been brought under ERISA's civil enforcement provision, 29 U.S.C. § 1132, and when no other independent legal duty is implicated by defendant's alleged actions. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) ("[S]tate law claims seeking relief within the scope of ERISA § 502(a)(1)(B) are completely preempted."). That is so because "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans[,]" requiring "expansive [preemption] provisions" to "ensure that employee benefit plan regulation would be "exclusively a federal concern." *Davila*, 542 U.S. at 208 (internal quotation marks omitted).

A cause of action under state law is subject to conflict preemption when a state law "relate[s] to" an employee benefit plan. 29 U.S.C. § 1144(a). A cause of action relates to an ERISA plan when it "has a connection with or reference to such a plan." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (internal quotation marks omitted). This determination requires a court to take "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* The Fifth Circuit has clarified this analysis by requiring a defendant to prove that (1) "the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan," and (2) "the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and

beneficiaries." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (citation and internal quotation marks omitted).

## B. Discussion

BCBS's preemption argument regarding Victory Medical's claim for breach of the duty of good faith and fair dealing as to ERISA plans can be readily dismissed. As Victory Medical points out, its complaint asserts the claim only as to non-ERISA plans. *See* (Dkt. #145 ¶ 217) ("[W]ith respect to the BCBS Plans that are not employee welfare benefit plans governed by ERISA . . . ."). For that reason, preemption does not apply.

The strength of BCBS's preemption argument as to Victory Medical's remaining state-law claims turn on whether they seek recovery for improper processing of benefit claims under plan terms or for misrepresentation of plan terms by a BCBS agent independent of the plans' actual terms. "It is clear that ERISA preempts a state law cause of action brought by an ERISA plan participant or beneficiary," or a healthcare provider as an assignee, "alleging improper processing of a claim for plan benefits" under the plan's terms. *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Such claims would undermine the "uniform regulatory regime" ERISA was designed to create by enabling plaintiffs to use state law as alternative means of relief for ERISA benefits. *See Arana*, 338 F.3d at 437. Because Victory Medical's claims for unjust enrichment and money had and received arise from BCBS's allegedly intentional "underpaying or not paying

[Victory Medical] for the treatment that [it] provided to BCBS Subscribers" under the plans' terms, and not from alleged misrepresentations by BCBS agents, the claims are for "improper processing of a claim for plan benefits" and are preempted as to ERISA plans. *See* (Dkt. #145 ¶ 257). But the remainder of Victory Medical's state-law claims do not seek ERISA benefits under the terms of the ERISA plans; they seek relief exclusively under the alleged misrepresentations of coverage and benefits provided by BCBS's agents.

The Fifth Circuit has addressed the preemption issue for such claims. *See Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382–87 (5th Cir. 2011), *adhered to en banc*, 698 F.3d 229 (5th Cir. 2012). Just as here, *Access Mediquip* involved a healthcare-services provider suing an insurer under various state-law causes of action for alleged oral misrepresentations about the scope of insurance coverage and benefits made by an insurer's agent prior to providing healthcare services. *Id.* at 378–81. The Fifth Circuit determined that the healthcare provider's claims for promissory estoppel, negligent misrepresentation, and violation of the Texas Insurance Code were not preempted by ERISA because the claims "were not premised on [the service provider's] right to recover benefits under the plan's terms, but rather on the [insurer's] misleading representations regarding the extent that the plan would reimburse [the provider] for it services." *Id.* at 383. Because such claims do not "depend on the terms of the ERISA plans," liability requires a separate inquiry into the reimbursement a provider "could reasonably have expected given what could fairly be inferred from the statements," and whether the benefits provided were

"consistent with that expectation." *Id.* at 385. In that way, the claims do not implicate preemption concerns, as the claims regulate insurers' representations to providers, not ERISA plans, and "concern the relationship between the plan and third-party, non-ERISA entities who contact the plan administrator to inquire whether they can expect payment for services they are considering providing to an insured," not the relationship between the ERISA plan and its participants and beneficiaries. *Id.* at 385–86.

Under *Access Mediquip*, Victory Medical's claims for promissory estoppel, negligent misrepresentation, and violation of the Texas Insurance Code are not subject to ERISA preemption. Each claim arises from BCBS's alleged misrepresentations about coverage and benefits, not the terms of the underlying ERISA plans. *See* (Dkt. #145 ¶¶ 235–37) (promissory estoppel); (*id.* ¶¶ 240–42) (negligent misrepresentation); (*id.* ¶ 246) (Texas Insurance Code); *see also Tex. Ctr. For Obesity Surgery, PLLC v. UnitedHealthCare of Tex. Inc.*, No. 3:13-CV-0922, 2014 WL 772437, at *4–*6 (N.D. Tex. Feb. 27, 2014) (noting that, "[i]n essence, *Access Mediquip* confirmed that a [state-law] claim based solely on misrepresentations by the insurer to the provider is not preempted by ERISA," and holding the same).

BCBS contends that Victory Medical's state-law claims fall under the preemptive ambit of claims "that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled." *Mem'l Hosp.*, 904 F.2d at 245. But, for the same reasons, Victory Medical's claims for promissory estoppel, negligent misrepresentation, and

violation of the Texas Insurance Code do not constitute an oral modification of the ERISA plans' terms. The claims seek relief exclusively on the basis of the representations made by BCBS's agents, separate and apart from the terms of the ERISA plans. Under such circumstances, the "alleged right to reimbursement does not depend on the terms of the ERISA plans" whatsoever, so the right cannot be understood to modify those terms. *See Access Mediquip*, 662 F.3d at 385. For these reasons, BCBS's motions to dismiss Victory Medical's claims for breach of the duty of good faith and fair dealing, promissory estoppel, negligent misrepresentation, and violation of the Texas Insurance Code as to ERISA plans on the basis of preemption are denied, and its motions to dismiss Victory Medical's claims for unjust enrichment and money had and received as to ERISA plans on the basis of preemption are granted.

## IV. FAILURE TO STATE A CLAIM

BCBS also moves to dismiss Victory Medical's claims for failure to state a claim under Rule 12(b)(6). The Court addresses each claim in turn.

## A. Legal Standards

### i. Rule 8(a)

Under the relaxed pleading standards of Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When a defendant contends that a plaintiff has failed to meet this standard, Rule 12(b)(6) provides a mechanism to challenge the legal sufficiency of a claim early in litigation. Such motions are,

however, "viewed with disfavor and rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must plead in its complaint only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In assessing a motion to dismiss under Rule 12(b)(6), the facts pleaded are entitled to a presumption of truth, but legal conclusions that lack factual support are not entitled to the same presumption. *Id.* To determine whether the plaintiff has pleaded enough to "nudge[] their claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id.* at 679–80 (first quoting *Twombly*, 550 U.S. at 570, then citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2nd Cir. 2007)) (internal quotation marks omitted). This threshold is surpassed when "a plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

### ii. Rule 9(b)

A complaint alleging fraud or mistake, however, faces a heightened standard under Federal Rule of Civil Procedure 9(b). The Rule provides that a party "must state with particularity the circumstances constituting fraud or mistake." "[T]he particularity demanded by Rule 9(b) differs with the facts of each case[.]" *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). But, at a minimum, Rule 9(b) requires the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

## B. Discussion

### i. ERISA Benefits

Victory Medical asserts a claim for underpayment or nonpayment of insurance benefits as to ERISA plans. *See* 29 U.S.C. § 1132(a)(1)(B) (creating a cause of action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

BCBS contends that Victory Medical's claim for ERISA benefits should be dismissed for failure to state a claim. BCBS argues that the claim should be dismissed because Victory Medical failed to specify a plan term allegedly violated. Similarly,

Victory Medical failed to provide a specific rate of reimbursement required for each benefit claim, preventing a plausible determination that BCBS's actual reimbursements fell below the required rate. Further, BCBS argues that the sample SPDs in the complaint undermine Victory Medical's claim by involving only a handful of Defendants and benefits claims, not including the language of the underlying plans themselves, and listing several different potential reimbursement methods. Victory Medical's efforts to get around these deficiencies, BCBS says, are insufficient. Generally alleging that BCBS owes Victory Medical more than 30% of its billed charges is unsupported by the example SPDs. Likewise, pleading "on information and belief" is inadequate, as is listing "unknown" or "other" for many of the claims' reimbursement method. And BCBS argues that, in any event, Victory Medical's failure to exhaust internal claim-review processes warrants dismissal.

Victory Medical responds that, under controlling Fifth Circuit precedent, it may rely on the facts alleged and representative SPDs, rather than the underlying plans themselves. Victory Medical then argues that its allegations, in conjunction with the representative SPDs and spreadsheets on each individual insurance claim at issue, are sufficient to plausibly state a claim. It clarifies that the basis of its claim is not that the insurance plans require compensation of at least 30% of Victory Medical's billed charges. Instead, it says that the plans provide reimbursement rates that fundamentally turn on some version of the local rates charged by providers or Medicare rates, such that payment of 11% of Victory Medical's billed charges on average across the insurance claims at issue is enough to plausibly show

underpayment or nonpayment of benefits, irrespective of the particular rate applicable to each claim.

The Fifth Circuit's decision in *Innova Hospital San Antonio, LP v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018) controls the resolution of this claim and counsels denial of BCBS's motion to dismiss. In *Innova*, a healthcare provider sued BCBS for alleged underpayment or nonpayment of insurance benefits as an assignee of its former patients. *Id.* at 723–24. *Innova* involved facts materially similar to this case. Innova Hospital alleged that it treated numerous BCBS-insured patients, who assigned their benefits and claims to Innova prior to receiving healthcare services. *Id.* Innova, an out-of-network provider, subsequently sought reimbursement for the assigned benefits in accordance with the underlying insurance plans. *Id.* But Innova was reimbursed for only 11% of its total billed charges on the roughly 800 benefits claims at issue. *Id.* at 725. Innova sued BCBS for the alleged benefits owed and, in its pleadings, relied exclusively upon these allegations and a few SPDs as representative examples of the terms and obligations within the underlying insurance plans. *Id.* at 729–30. Innova was unable to rely on the plans themselves because BCBS had exclusive control over them and refused to disclose them. *Id.* The district court dismissed the claim for failure to identify the specific plan provisions at issue, but the Fifth Circuit reversed that determination. *Id.* at 731.

*Innova* clarified the application of Rule 8's pleading standard under these circumstances. "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in ERISA

contexts when it may be extremely difficult for them to access such plan provisions." *Id.* at 728. In *Innova*, the difficulty in obtaining such provisions arose from their exclusive possession by BCBS, who refused to disclose them despite repeated requests. *Id.* at 729–30. Those circumstances reflect a broader reality in the ERISA context, in which plaintiffs, "[n]o matter how clever or diligent," "generally lack the inside information necessary to make out their claims in detail[.]" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). Recognizing this difficulty, the Fifth Circuit joined several sister circuits in stating that "plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)." *Innova*, 892 F.3d at 729. The Fifth Circuit explained that, "[s]uch a recognition is consistent with the principle that 'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]'" *Id.* at 728–29 (quoting *Twombly*, 550 U.S. at 555). Instead, an ERISA plaintiff may survive Rule 12 dismissal by relying on sufficient factual allegations and representative SPD terms, particularly when a plaintiff is "unable to obtain plan documents even after good-faith efforts to do so." *Id.* at 729.

*Innova*'s instruction applies with equal force in this case. Victory Medical alleged that it does not have access to the underlying insurance plans because they are under BCBS's exclusive control and BCBS has refused to disclose them. Victory Medical was only able to incorporate the representative SPDs because it received them as a part of the disclosures in its prior bankruptcy proceeding. Under these

circumstances, Victory Medical need not allege specific plan provisions and may instead rely on sample SPDs and pleading on information and belief. *See id.* at 728.

Victory Medical has plausibly stated a claim for insurance benefits. Drawing on numerous example SPDs and a spreadsheet of all benefits claims at issue, Victory Medical alleged the following material facts. It provided healthcare services to patients insured by BCBS. (Dkt. #145 ¶ 157). In support, Victory Medical provided a spreadsheet of all 1,896 benefits claims at issue, which includes patient-identification information, insurance-policy identification information, insurance-claim identification information, dates of service, billed charges, paid charges, and the respective Defendant insurers. (Dkt. #145, Schedule 1a–b & Exs. 1–48). Prior to providing such services, Victory Medical alleges that it received a valid assignment of claims and benefits from each of its patients. (Dkt. #145 ¶¶ 149–51). Victory Medical attached several sample assignment provisions to its complaint and alleged that they are representative of all the assignment provisions at issue. (Dkt. #145, Ex. 49). Then, according to Victory Medical, it properly submitted benefits claims to BCBS for the services provided. (Dkt. #145 ¶ 161). Victory Medical asserts that BCBS either underpaid or refused to pay the claims, paying under 30% of Victory Medical's billed charges on each claim at issue and only 11% of Victory Medical's billed charges on average. (*Id.* ¶ 139); (*Id.* ¶¶ 157–58). Based on the available SPDs, Victory Medical alleges that those payments were insufficient under the terms of the insurance plans governing the claims, which require reimbursement based on some version of the locally charged provider rates or Medicare rates. (*Id.* ¶ 122). On information and

belief, Victory Medical alleged that the plans' reimbursement terms are substantially similar across the benefits claims at issue, as demonstrated by the representative SPDs. (*Id.* ¶ 142). Just as in *Innova*, these allegations are sufficient to state a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B). *See Innova*, 892 F.3d at 729 (holding that materially similar allegations, "accepted as true and viewed in the light most favorable to the Hospital, are sufficient to state a claim for plan benefits under 29 U.S.C. § 1132(a)(1)(B)").

BCBS's arguments to the contrary are unavailing. As discussed, *Innova* rejects BCBS's contention that pleading on information and belief or in reliance on representative SPDs rather than insurance plans is insufficient. *See id.* at 730 ("The *Twombly* plausibility standard, which applies to all civil actions, . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible . . . .") (internal quotation marks and citations omitted); *id.* at 729 (allowing allegations based on SPD terms rather than plan terms when ERISA plaintiff was "unable to obtain plan documents even after good-faith efforts to do so").

BCBS attempts to distinguish *Innova* by pointing to the rate of reimbursement. BCBS contends that, unlike *Innova* in which the representative plan terms required reimbursement of out-of-network providers at 80% of "reasonable and customary" expenses, *see id.* at 725, Victory Medical failed to plausibly state a claim by not alleging the specific rate of reimbursement applied to each insurance claim.  The

thrust of BCBS's argument is that the multitude of different potential reimbursement rates provided in the SPDs prevents a reasonable inference that Victory Medical was underpaid for its asserted benefits because there is no clear standard against which to compare the benefits actually paid.

BCBS's argument attempts to place a greater pleading burden on Victory Medical than Rule 8(a) requires in this context. At the dismissal stage, a court, taking a complaint's factual allegations as true, need only determine whether the complaint alleges facts sufficient to draw a reasonable inference of liability—a plausibility determination, not a probability requirement. *See Iqbal*, 556 U.S. at 678. In the context of benefits claims sought under ERISA, that inquiry asks whether the facts alleged allow a court to reasonably infer that the ERISA plaintiff has been underpaid or not paid at all for healthcare services provided in violation of an insurance plan. In recognition of the unique asymmetry of information in the ERISA-benefits context, circuit courts have repeatedly emphasized that "while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [the courts] must also take account of their limited access to crucial information." *Braden*, 588 F.3d at 598; *accord Innova*, 892 F.3d at 728 (collecting cases).

These principles underscore the plausibility of Victory Medical's claim for benefits in this case. Victory Medical alleges that it was assigned insurance benefits and paid only 11% of its billed costs on average and substantiates its allegations with spreadsheets identifying the patient, account, services rendered, payments made,

and reimbursement expected. In addition to these allegations, Victory Medical alleges facts explaining that the reimbursement rates in the SPDs essentially provide either a version of the reasonable and customary rates charged by healthcare providers or a percentage of the Medicare reimbursement rates. Although Victory Medical has not yet been able to ascertain which rate applies to each insurance claim, that does not prevent the Court from drawing the reasonable inference that BCBS underpaid or failed to pay the insurance claims from the facts alleged. To be sure, this is not a determination of underpayment. BCBS may prevail on summary judgment after further discovery and development of the record. But at the dismissal stage, governed by the principles discussed, the Court determines that Victory Medical has alleged facts sufficient to plausibly state a claim for insurance benefits under ERISA.

BCBS also attempts to heighten the pleading requirement placed on Victory Medical due to the large volume of benefits claims at issue in this case. While a large number of claims may present challenges for a plaintiff's ability to collect and marshal the requisite factual allegations, it does not change the fundamental nature of his task or the legal standards imposed upon him at the dismissal stage. Because Victory Medical has satisfied the plausibility standard as to its ERISA-benefits claim, mere reference to the large number of insurance claims at issue alone is insufficient to change that result.

BCBS further argues that Victory Medical's ERISA-benefits claim should be dismissed for lack of standing because Victory Medical failed to exhaust administrative remedies. As previously noted, failure to exhaust in this context is an

affirmative defense, not a jurisdictional bar. *Crowell*, 541 F.3d at 308–09 ("[W]e have never construed the [ERISA exhaustion] doctrine strictly as a jurisdictional bar and have referred to it as a defense.") (footnote and internal quotation marks omitted) (alterations in original). A court cannot dismiss a claim based on an affirmative defense unless it "appears on the face of the complaint." *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991).

Contrary to BCBS's assertions, failure to exhaust does not appear on the face of Victory Medical's complaint. Instead, Victory Medical alleges that, "Victory has used all reasonable efforts to exhaust available appeals avenues under the BCBS Plans and followed applicable appeal procedures to convince Defendants to reimburse Victory properly on the claims for medical services that Victory provided to the BCBS Subscribers." (Dkt. #145 ¶ 179). That Victory Medical also pleaded excusal from exhaustion in the alternative does not change this result. *See* (*id.* ¶ 183) ("In cases where the internal appeal process *may not* have been exhausted, full exhaustion is excused . . .") (emphasis added). Because these allegations do not support a determination that failure to exhaust "appears on the face" of Victory Medical's complaint, BCBS's argument is unpersuasive at this stage of proceedings. *See, Rapid Tox Screen*, 2017 WL 3658841, at *8 (declining to dismiss for failure to exhaust at the dismissal stage).

For these reasons, Victory Medical has plausibly stated a claim for underpayment or nonpayment of benefits under ERISA, 29 U.S.C. § 1132(a)(1), and BCBS's motions to dismiss this claim are denied.

### ii. Breach of Contract

For similar reasons, Victory Medical has also plausibly stated a claim for breach of contract. Victory Medical asserts a claim to recover allegedly underpaid or nonpaid insurance benefits under non-ERISA plans. In support of this claim, Victory Medical relies on the same factual allegations underlying its ERISA-benefits claim. Likewise, BCBS relies on the same general arguments about the supposed insufficiency of those allegations.

Under Texas law, "[t]he essential elements of a breach of contract claim are the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and damages sustained as a result of the breach." *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd).

*Innova* is again instructive and counsels denial of BCBS's motion to dismiss this claim. The Fifth Circuit, calling upon its prior reasoning in *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731 (5th Cir. 2015), held that a complaint plausibly stated a claim for breach of contract under Texas law by alleging (1) "the existence of valid contracts (non-ERISA plans)," (2) "performance by the [healthcare provider]," (3) "breach of the contracts by the Insurers," and (4) "damages in the form of underpayment or non-payment sustained as a result of the breach." *Innova*, 892 F.3d at 732. The Court's determinations regarding the ERISA-benefits claim apply with equal force in this context. Victory Medical alleged the existence of valid insurance plans, which BCBS does not dispute. It further alleged performance

by way of healthcare services rendered and insurance benefits demanded. It next alleged breach through underpayment or nonpayment of benefits. And it alleged damages of $43,162,553.66. These allegations are sufficient to plausibly state a claim for breach of contract, and BCBS's motions to dismiss the claim are denied.

### iii. Failure to Provide Full and Fair Review and Breach of Fiduciary Duties

Victory Medical asserts ERISA claims for failure to provide full and fair review and breach of fiduciary duty. In short, Victory Medical asserts that BCBS failed to provide full and fair review of its insurance-benefits claims as required by ERISA and violated its fiduciary duties in doing so for its own financial benefit. Victory Medical seeks relief for both claims under 29 U.S.C. § 1132(a)(3). Specifically, it seeks a declaratory judgment holding that BCBS has failed to provide full and fair review of its benefits claims and an injunction ordering BCBS "to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations." (Dkt. #145 ¶ 208). Additionally, it seeks restitution for bonuses earned as a result of wrongful denial or underpayment of benefit claims and declaratory and injunctive relief to rectify the allegedly wrongful handling of such claims. (*Id.* ¶ 232).

BCBS asserts that both claims should be dismissed. BCBS argues that the claims are barred because relief under section 1132(a)(3) is unavailable when adequate relief for the same allegedly wrongful conduct is available under section 1132(a)(1) in the form of money damages for underpaid insurance benefits. Victory Medical argues in response that its 1132(a)(3) claims seek equitable relief that is

distinct from the relief sought under its section 1132(a)(1) claim, placing its section 1132(a)(3) claims beyond the bar on duplicative claims.

ERISA provides several civil-enforcement provisions under which a party may bring claims. 29 U.S.C. § 1132(a). Under section 1132(a)(1), a party may bring a claim to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" *Id.* § 1132(a)(1)(B). Such a claim traditionally seeks legal relief in the form of monetary damages for alleged benefits owed. *Innova*, 892 F.3d at 733. Under section 1132(a)(3), a party may bring a claim to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3) (internal parentheticals removed). Claims under section 1132(a)(3), however, are restricted to "the types of equitable relief typically available in equity." *Innova*, 892 F.3d at 733 (quoting *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 363 (5th Cir. 2014)).

The relationship between claims seeking relief under section 1132(a)(1) and section 1132(a)(3) is clear: "if a plaintiff can pursue benefits under the plan pursuant to [§ 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [§ 1132(a)(3)]." *Id.* (alterations in original) (quoting *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) (collecting cases)). This is in keeping with Supreme Court guidance clarifying that section 1132(a)(3) "act[s] as a safety net,

offering appropriate equitable relief for injuries caused by violations that § 502 [§ 1132(a)(1)] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Put differently, traditionally equitable relief available under section 1132(a)(3) is only "appropriate" when legal relief under section 1132(a)(1) for the same alleged wrongdoing is not available. The "vast majority of circuit courts," including the Fifth Circuit, have recognized this bar on additional section 1132(a)(3) relief. *Innova*, 892 F.3d at 733; *accord Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (stating that "the great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)").

This precedent settles the issue. Victory Medical can pursue monetary relief for benefits under section 1132(a)(1), thereby providing an adequate remedy and barring further relief under section 1132(a)(3). *See, e.g., Tolson v. Avondale Indus. Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

Victory Medical's attempt to evade this result is unconvincing. Victory Medical contends that the relief it seeks under section 1132(a)(3) is traditionally available in equity and distinct from the relief it seeks under section 1132(a)(1). Regardless of whether the relief is traditionally available in equity, it is clear that the relief is in

essence indistinguishable from the relief sought under section 1132(a)(1). When making this determination, a court "must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Innova*, 892 F.3d at 733 (quoting *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)). Courts have repeatedly rejected efforts to evade this bar by labeling essentially duplicative relief "equitable" or "distinct." *See, e.g.*, *Cent. States*, 756 F.3d at 360 (dismissing a claim for relief under section 1132(a)(3) seeking declaratory judgment, restitution, unjust enrichment, and other equitable relief as duplicative of available relief under section 1132(a)(1)).

Here, Victory Medical's declaratory judgment and injunctive relief under its claim for failure to provide full and fair review seek to address BCBS's alleged failure to properly provide insurance benefits—its section 1132(a)(1) claim asks to be paid for that wrongdoing, and its section 1132(a)(3) claims ask to have BCBS try again in accordance with the law and the plan terms. Likewise, Victory Medical's restitution relief under its claim for breach of fiduciary duty arises from the same alleged mishandling of its benefits claims. Because Victory Medical "can pursue benefits under the plan pursuant to [§ 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under [§ 1132(a)(3)]." *See Innova*, 892 F.3d at 733. Victory Medical's claims for denial of full and fair review and breach of fiduciary duty are therefore dismissed.

### iv. Breach of the Duty of Good Faith and Fair Dealing

Victory Medical asserts a claim for breach of the duty of good faith and fair dealing based on BCBS's alleged underpayment or nonpayment of benefits and other related allegations of wrongdoing throughout the claim-administration process, including arbitrary determination of insurance claims and failure to provide written explanation of such determinations. Victory Medical asserts this claim as an alleged assignee of its former BCBS-insured patients.

BCBS moves to dismiss Victory Medical's claim. BCBS argues that the duty does not extend beyond the special insurer–insured relationship to third parties like Victory Medical. BCBS further contends that, because the duty arises from that special relationship and is nondelegable, an insured cannot assign the claim. And even if an assignment could be effectual, the assignments at issue do not include this claim because the assignments were made prior to any alleged breach of the duty. Victory Medical argues that the claim need not extend beyond the insurer–insured relationship because Victory Medical stands in the shoes of its BCBS-insured former patients as an assignee. Further, Victory Medical contends that it is irrelevant that its patients assigned their claims prior to any alleged breach because the assignments included future claims.

Under Texas law, a claim for breach of the duty of good faith and fair dealing arises in this context when "there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725

S.W.2d 165, 167 (Tex. 1987). The duty "emanates from the special relationship between the parties and not from the terms of the contract[.]" *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697–98 (Tex. 1994). But the relationship exists "only because the insured and the insurer are parties to a contract," so that "[w]ithout such a contract there would be no 'special relationship' and hence, no duty of good faith and fair dealing." *Id.* at 698. The duty is tightly circumscribed. *See GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 295 (Tex. App.—Houston [1st Dist.] 1997, writ denied) ("Although often urged to do so, the supreme court has hesitated to extend the duty of good faith and fair dealing to other contexts beyond the special relationship between an insurance company and its insured."). And it "is non-delegable." *Natividad*, 875 S.W.2d at 698.

BCBS's challenges to Victory Medical's claim for breach of the duty of good faith and fair dealing are unpersuasive. BCBS correctly points out that the claim cannot be maintained by a third party to an insurance contract. But Victory Medical is not suing in its capacity as a healthcare provider—it is suing as an assignee of its BCBS-insured patients. As an assignee, Victory Medical "stands in [the assignor's] shoes" and may assert the "rights that [the assignor] himself could assert." *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000). BCBS does not dispute that Victory Medical's former patients, as BCBS insureds, maintained a special relationship with BCBS and could therefore assert such a claim.

Instead, BCBS appears to argue that because the duty is nondelegable, it must also be unassignable. Delegation and assignment, however, are distinct concepts. In

this context, nondelegation operates as a restriction only on the insurer as the obligor of the duty itself. *See Natividad*, 875 S.W.2d at 698 & n.7 ("By imposing a non-delegable duty of good faith and fair dealing on insurance companies we are sending a clear message—the buck stops with them."). Assignment, on the other hand, generally operates as a mechanism to transfer rights and obligations from one party to another. *See Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994) ("An assignee stands in the shoes of his assignor.") (internal quotation marks omitted). BCBS provides no authority instructing that nondelegation in this context restricts the insured's ability to assign claims. It instead relies on *Quality Infusion Care, Inc. v. Health Care Service Corporation*, for the separate proposition that a party cannot assign future claims. 628 F.3d 725 (5th Cir. 2010). This reliance is misplaced, however, as *Quality Infusion* simply reaffirmed the principles that "an assignee takes all of the rights of the assignor" and that the terms of an assignment provision will define the scope of those rights. *Id.* at 729 (internal quotation marks omitted). At no point does BCBS assert that Victory Medical's patients could not bring claims for breach of the duty of good faith and fair dealing or that the assignment provisions in this case do not include future claims. For these reasons, BCBS's motions to dismiss Victory Medical's claim for breach of the duty of good faith and fair dealing are denied.

### v. Promissory Estoppel

Victory Medical asserts a claim for promissory estoppel based on alleged misrepresentations by BCBS agents about its patients' insurance coverage and reimbursement rates. Victory Medical alleges that it contacted BCBS representatives

prior to providing healthcare services to BCBS-insured patients to determine insurance coverage and reimbursement rates. The representatives, according to Victory Medical, would confirm coverage and, in some instances, provide the reimbursement rates as well. Victory Medical further alleges that some of the reimbursement rates stated by the representatives were more favorable than the actual plan rates. Victory Medical then alleges that it relied on those representations in providing healthcare services, as it would not provide such services without them.

BCBS moves to dismiss Victory Medical's claim for promissory estoppel on two grounds. BCBS first argues that the claim is barred by the underlying insurance plans because such a claim is available only in the absence of a valid contract. BCBS next argues that Victory Medical fails to allege facts sufficient to state a clear and definite promise. Victory Medical responds by arguing that its claim for breach of contract does not bar this claim because this claim relies exclusively on BCBS's oral representations to Victory Medical, not the terms of the written insurance contracts between BCBS and its insureds. Even so, Victory Medical suggests that it could maintain its promissory-estoppel claim in the alternative. Victory Medical then argues that its factual allegations are sufficient to plausibly state a claim.

Under Texas law, "[t]he elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (Bland, J.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). A promissory-estoppel claim,

however, is unavailable when the alleged promise is covered by a written agreement. *See, e.g.*, *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002) ("[T]he promissory-estoppel doctrine presumes no contract exists[.]"); *Doctors Hosp. 1997, LP v. Sambuca Hous., LP*, 154 S.W.3d 634, 636–37 (Tex. App.—Houston [14th Dist.] 2004, pet. abated) ("For many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the absence of a valid and enforceable contract.") (collecting cases). The viability of Victory Medical's promissory-estoppel claim, then, turns on whether the alleged promises are covered by the underlying insurance plans.

The pleadings show that insurance coverage and reimbursement rates are covered by the underlying insurance plans. The essence of Victory Medical's claim for breach of contract is that Victory Medical has a "right to receive reimbursement under the BCBS Plans for the services that it rendered to the BCBS Subscribers." (Dkt. #145 ¶ 212). The right arises, according to Victory Medical, because "all the BCBS Plans require reimbursement of medical expenses incurred by BCBS Subscribers at specified rates" for covered services. (*Id.* ¶ 211). Under Victory Medical's own allegations, then, it is clear that the insurance plans include terms regarding coverage and reimbursement. Victory Medical goes on to allege that its claim for promissory estoppel arises from oral representations "that the medical treatment sought by the BCBS Subscribers at Victory was a covered procedure under the BCBS Plans and that the fees associated with that treatment were covered charges under the BCBS Plans." (*Id.* ¶ 235). In other words, representations about

issues covered by the terms of the underlying contracts. This makes sense, as the representations were made during discussions with BCBS representatives to "verify the insured's benefit levels and that no exclusions applied" under the terms of the insurance plans. (*Id.* ¶ 184). Irrespective of the actual substance of those representations, whether accurate representations of the underlying plans or not, it is untenable to argue that the plans did not cover the issues of insurance coverage and reimbursement rates.[20] For that reason, Victory Medical's claim for promissory estoppel is dismissed.

### vi. Negligent Misrepresentation

Victory Medical asserts a claim of negligent misrepresentation based on the same alleged representations to provide coverage by BCBS agents. BCBS argues that the claim should be dismissed, citing deficiencies in the factual allegations and an inability to recover when the representations accurately reflect the underlying plan terms. Victory Medical responds that it has pleaded factual allegations sufficient to

---

[20] The "covered under" analysis regarding viability of a promissory-estoppel claim under Texas law is distinct from the "related to" analysis regarding conflict preemption under ERISA. Conflict preemption inquires whether "the [state-law] claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan[.]" *Bank of La.*, 468 F.3d at 242 (citation and internal quotation marks omitted). In answering that question, a court must consider whether the state-law claim "depend[s] on the terms of the ERISA plans" or instead on the alleged misrepresentation alone. *Access Mediquip*, 662 F.3d at 385. A state-law claim will be conflict preempted, then, when liability requires an analysis of the substance of an insurance plan governed by ERISA. The promissory-estoppel analysis, however, asks the broader question of whether the substance of a representation underlying the promissory-estoppel claim is addressed by a written contract. That is because "the promissory-estoppel doctrine presumes no contract exists[,]" *Subaru*, 84 S.W.3d at 226, such that a contract covering the same substance as the alleged misrepresentation "renders the doctrine of promissory estoppel inapplicable[,]" *Pasadena Assocs. v. Connor*, 460 S.W.2d 473, 481 (Tex. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). For these reasons, Victory Medical's claim for promissory estoppel is not "related to" the insurance plan under ERISA conflict preemption, but is "covered by" the insurance plans under Texas law.

plausibly state a claim. Victory Medical further argues that it may maintain its claim, even when the oral promises accurately reflect the written plan terms, because the alleged misrepresentation was the fact of future reimbursement at the rates promised, not the plans' actual terms of reimbursement.

Before the Court can determine the sufficiency of Victory Medical's factual allegations, it must first determine what pleading standard applies. Although "Rule 9(b) by its terms does not apply to negligent misrepresentation claims," *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003), the Rule "applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Under Fifth Circuit precedent, when determining whether to apply the heightened pleading standards of Rule 9(b) to a claim of negligent misrepresentation, a court must look to whether a plaintiff has provided a "separate focus" on the claim, distinct from any claim of fraud. *Benchmark*, 343 F.3d at 723. There is no separate focus when the claims of fraud and negligent misrepresentation "are based on the same set of alleged facts." *Id.*; *cf. Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 123 (5th Cir. 2019) (holding that Rule 9(b) did not apply when plaintiff's "negligent misrepresentation claim relie[d] on a different set of misrepresentations . . . than its fraudulent transfer claims"). Without a separate focus, Rule 9(b) applies to a negligent-misrepresentation claim. *See Williams*, 112 F.3d at 177 (applying Rule 9(b) to a claim of negligent misrepresentation).

Here, Victory Medical's claim of negligent misrepresentation is premised on the alleged misrepresentations by BCBS's agents to Victory Medical prior to providing healthcare services. (Dkt. #145 ¶¶ 240–42). These same alleged misrepresentations underlie Victory Medical's claim for violation of the Texas Insurance Code, (*id.* ¶ 246), which is subject to Rule 9(b), *see, e.g.*, *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011) (collecting cases). Therefore, Rule 9(b) applies to Victory Medical's claim for negligent misrepresentation.

At a minimum, Rule 9(b) requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Under Texas law, a claim for negligent misrepresentation requires that (1) "the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest," (2) "the defendant supplies false information for the guidance of others in their business," (3) "the defendant did not exercise reasonable care or competence in obtaining or communicating the information," and (4) "the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Victory Medical's factual allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. The complaint alleges that "the BCBS Entities' representatives" made representations prior to Victory Medical providing healthcare

services that BCBS would reimburse Victory Medical "at usual and customary charges or reasonable and customary rates" regarding 777 of the insurance claims at issue. (Dkt. #145 ¶ 241). It further alleges that such representations were false because BCBS did not reimburse the insurance-benefit claims at issue in accordance with those representations. (*Id.* ¶ 242). And it alleges that Victory Medical relied on such representations in providing healthcare services and, as a result, "has been directly and proximately injured in the sum of at least $31.5 million[.]" (*Id.*) While such allegations might suffice under Rule 8(a), they fail to satisfy the heightened requirements under Rule 9(b).

Victory Medical's efforts to supplement the complaint's general allegations with attachments and exhibits are insufficient. Victory Medical provides extensive documentation regarding the 777 alleged claims involving misrepresentation. *See* (Dkt. #145, Schedule 2 & Exs. 1–48). For each claim, exhibits 1–48 provide the insured's name or initials, insurance information, healthcare service and discharge dates, payment information, and the reimbursement rate allegedly represented by a BCBS agent. And Schedule 2 provides additional payment and expected-reimbursement data. While lengthy, the supplemental materials do not cure the substantive deficiencies in the complaint: the "who" and the "when" of the alleged misrepresentations. Victory Medical concedes as much when it admits that "[t]he only conceivably-additional details that could be added would be the precise date/time of the verification call and the identity of the employee of the claims verification agent who handled it." (Dkt. #236 at 38). But those are precisely the details required under

Rule 9(b)'s heightened pleading standard. *See Williams*, 112 F.3d at 178 ("Directly put, the who, what, when, and where must be laid out . . . ."). The length of Victory Medical's materials is no substitute for these essential details. *See id.* ("A complaint can be long-winded, even prolix, without pleading with particularity.").

Further, Victory Medical's proposal that BCBS use the pleadings "to identify that information within their own records" turns the Rule 9(b) pleading requirement on its head, *see* (Dkt. #236 at 38), as it is the plaintiff who bears the burden of making such a showing. Victory Medical's alternative proposal is equally perplexing. Victory Medical offers to produce "thousands of pages of verification forms associated with the underlying patient claims," which purport to include the dates of the alleged misrepresentations and the names of the BCBS agents making such representations, "once the discovery process ensues." (*Id.* at 38 n.79). That too turns the process on its head, as Rule 9(b)'s pleading requirements "must be laid out *before* access to the discovery process is granted." *See Williams*, 112 F.3d at 178 (emphasis in original). For these reasons, Victory Medical's claim for negligent misrepresentation is dismissed. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) ("We treat a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted.").

### vii. Texas Insurance Code

Victory Medical asserts a claim for violation of Texas Insurance Code sections 541.051 and 541.060 based on the same alleged misrepresentations by BCBS agents.

For that reason, the parties reassert their respective arguments on the sufficiency of the factual allegations regarding the claim for negligent misrepresentation.

As discussed, Victory Medical's claim for violation of the Texas Insurance Code is subject to the heightened pleading requirements of Rule 9(b). *See, e.g.*, *SHS Inv.*, 798 F. Supp. 2d at 815 (collecting cases). Under the Texas Insurance Code, it is unlawful to "make, issue, or circulate or cause to be made, issued or circulated, an estimate, illustration, circular or statement misrepresenting with respect to a policy issued or to be issued the terms of the policy, benefits or advantages promised by the policy." TEX. INS. CODE ANN. § 541.051(1) (parentheticals omitted). It is also unlawful to "misrepresent to a claimant a material fact or policy provision relating to coverage at issue." *Id.* § 541.060(a)(1).

Victory Medical's claim for violation of the Texas Insurance Code suffers the same pleading deficiencies as its claim for negligent misrepresentation. Victory Medical does not allege any additional facts regarding who made the misrepresentations at issue and when those misrepresentations were made. Instead, it concedes that the underlying factual allegations are the same between the two claims. *See* (Dkt. #236 at 40) ("[A]s explained above, plaintiffs' misrepresentation allegations have been pleaded with sufficient particularity given the complex nature of this case and substantial details plaintiffs have already provided.").

Further, Victory Medical's allegation that BCBS "knowingly" made the misrepresentations is conclusory. The complaint provides that "Defendants knowingly committed each of the foregoing acts with actual knowledge of the falsity,

unfairness, or deception of the foregoing acts and practices in violation of the Texas Insurance Code." (Dkt. #145 ¶ 250); *see also* (*id.* ¶ 251) ("Victory would show that as the Defendants' conduct was committed knowingly . . .") (internal quotation marks omitted). Victory Medical alleges no other facts supporting the allegation that BCBS's agents knowingly misrepresented the terms of the insurance plans. This sort of conclusory pleading is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true."). For these reasons, Victory Medical's claim for violation of the Texas Insurance Code is dismissed.

### viii. ERISA Penalties

Victory Medical asserts a claim for ERISA penalties for failure to disclose plan documents upon request, in violation of 29 U.S.C. § 1132(c)(1). BCBS moves to dismiss the claim because Victory Medical is not a party allowed to make such a request and Victory Medical otherwise fails to allege sufficient facts to plausibly state a claim. Victory Medical responds that it is a proper party as an assignee of its former patients' rights and that it plausibly states a claim.

ERISA establishes several disclosure obligations "to ensure that 'the individual participant knows exactly where he [or she] stands with respect to the plan.'" *Newell ex rel. Snow v. Aetna Life Ins. Co.*, No. CIV.A. 3:02-CV-475, 2002 WL 1840925, at *3 (N.D. Tex. Aug. 8, 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). One such obligation requires an administrator to comply with a proper request for any information by a plan

participant or beneficiary. 29 U.S.C. § 1132(c)(1)(B). "[U]pon written request" by a plan participant or beneficiary, an administrator must disclose a copy of the latest summary plan description, contract, or any "other instruments under which the plan is established or operated." *Id.* § 1024(b)(4). When met with such a request, an administrator must mail the materials to the participant or beneficiary within 30 days. *Id.* § 1132(c)(1)(B). Failure to comply is punishable, in a court's discretion, by fines of up to $100 per day from the date of failure or refusal or by other appropriate relief. *Id.*

Victory Medical's allegations are insufficient to plausibly state a claim. Nowhere in its complaint does Victory Medical allege that it is either a plan participant or beneficiary. At most, it alleges that it "is entitled to the requested plan documents and associated documents." (Dkt. #145 ¶ 194); *see also* (*id.* ¶ 260) (reasserting that Victory Medical "is entitled to at least the requested documents" without alleging that it is a plan participant or beneficiary). A conclusory assertion of entitlement is no substitute for a factual allegation that it is one of the limited classes of individuals allowed to bring this claim. Victory Medical's claim for ERISA penalties is therefore dismissed.

### ix. Exemplary Damages

Victory Medical also asserts a claim for exemplary damages. BCBS moves to dismiss the claim because it is a remedy, not an independent cause of action. In response, Victory Medical argues the reasons why it should be awarded exemplary

damages but does not argue that exemplary damages constitute an independent cause of action.

Under Texas law, "there is no independent cause of action for exemplary damages." *Robbins v. Payne*, 55 S.W.3d 740, 747 (Tex. App.—Amarillo 2001, pet. denied); *accord Sunshine Kids Found. v. Sunshine Kids Juvenile Prod., Inc.*, No. CIV. A. H-09-2496, 2009 WL 5170215, at *17 (S.D. Tex. Dec. 18, 2009) ("Exemplary damages are a remedy and not a cause of action.") (citing *Sulzer Carbomedics v. Oregon Cardio–Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001); *Travelers Indemnity Co. v. Fuller*, 892 S.W.2d 848, 852 (Tex. 1995)). For that reason, Victory Medical's claim for exemplary damages is dismissed.

### x. "Group Pleading"

BCBS challenges the sufficiency of the factual allegations within Victory Medical's entire complaint based on what it calls "group pleading." BCBS argues that Victory Medical fails to state a single plausible claim because the complaint asserts claims against and refers to the Defendants collectively rather than individually. In support of its contention, BCBS points to the inclusion of SPDs involving only some of the Defendants and the use of pleading on information and belief as especially problematic deficiencies in this regard.

These arguments are essentially a repackaging of BCBS's challenges to the sufficiency of Victory Medical's factual allegations. Because the Court has addressed these arguments as they apply to particular claims, the Court need only reiterate its resolution of these issues. First, reliance on SPDs as a representative proxy for

insurance plan terms may be sufficient to plausibly state a claim for insurance benefits under ERISA or state law when, as here, a plaintiff is denied access to the plans despite good-faith efforts to obtain them. *See Innova*, 892 F.3d at 729–30. Second, pleading on information and belief that the SPDs provided are in fact representative of all the insurance plans at issue is also an available tool and may likewise be sufficient to plausibly state a claim. *Id.* For these reasons, BCBS's argument that Victory Medical must provide an SPD involving each individual Defendant to plausibly state a claim against that Defendant is foreclosed by this circuit's precedent.

Further, the group-pleading argument largely ignores the information provided by the exhibits attached to the complaint, in which Victory Medical provides details regarding each of the underlying benefits claims at issue. As discussed, these allegations do not include certain details essential to satisfy Rule 9(b)'s heightened pleading requirement as to some claims. But that is a distinct issue—the allegations do not include certain information but nonetheless break down what information is provided by individual Defendants.

BCBS's cited authority underscores that its group-pleading arguments are simply a repackaging of the insufficient-pleading arguments that the Court has already addressed. In *Gurganus v. Furniss*, the court used the label "group pleading" to highlight the deficiencies in a complaint whose vague factual allegations rendered it "impossible to ascertain which particular Defendant(s) are supposedly responsible for the [wrongful] acts[.]" No. 3:15-CV-3964, 2016 WL 3745684, at *5 (N.D. Tex. July

13, 2016). Moreover, the dissent in *Hinojosa v. Livingston* did not explicitly refer to "group pleading" at all and simply urged dismissal on the basis of conclusory factual allegations. *See* 807 F.3d 657, at 684–85 (5th Cir. 2015). More persuasive here are the cases in which courts determined that claims survive dismissal under analogous circumstances, namely a healthcare provider asserting hundreds of benefits claims and other related causes of action against numerous defendant insurers. *See, e.g.*, *Innova*, 892 F.3d at 725 (overruling dismissal of claims for insurance benefits under ERISA and state law arising from 863 insurance-benefits claims asserted against 16 defendant insurers, irrespective of group-pleading concerns). For these reasons, the Court declines to dismiss any of Victory Medical's claims on the basis of BCBS's "group pleading" argument.

### xi. Attorney's Fees

Victory Medical asserts that it is entitled to attorney's fees under ERISA and state law and makes that assertion as an independent cause of action, *see* (Dkt. #145 ¶ 263) (seeking fees under ERISA, 29 U.S.C. § 1132(g), the Texas Business and Commerce Code, the Texas Civil Practice and Remedies Code, and Federal Rule of Civil Procedure 54(c)), as an assertion within the applicable causes of action, and as a request in its prayer for relief, *see* (*id.* at 79 ¶ xvi) (requesting an award of attorney's fees on the same grounds). BCBS argues that the claim for attorney's fees should be dismissed because it does not constitute an independent cause of action. Victory Medical states that it "agree[s] and just seek[s] fees where provided for by law in connection with their claims." (Dkt. #236 at 43).

None of the potential bases for award of attorney's fees require Victory Medical to assert an independent cause of action for such fees. Federal Rule of Civil Procedure 54 requires that "[a] claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). The Fifth Circuit has explained that, "to be entitled to attorneys' fees, a party must (1) request attorneys' fees in its pleadings and (2) file a timely motion for attorneys' fees under Rule 54(d)(2) within fourteen days after the entry of final judgment." *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998) (per curiam). A fee award under Rule 54, then, does not require a party to also assert a claim for attorney's fees.

Likewise, under ERISA, a court may in its discretion "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The court may exercise such discretion "as long as the fee claimant has achieved some degree of success on the merits[.]" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted). It too does not impose a requirement that the plaintiff assert an independent cause of action for attorney's fees to preserve the right to such fees.

The same is true for Victory Medical's alleged state law bases for recovery of attorney's fees.[21] The Texas Civil Practices and Remedies Code authorizes recovery

---

[21] In its complaint, Victory Medical asserts that it is entitled to attorney's fees pursuant to Texas Business and Commerce Code section 38.001, *et seq.* But Chapter 38 of the Texas Business and Commerce Code is entitled, "Regulation of Telephone Solicitation," and is now repealed. The Court takes Victory Medical instead to mean that it is entitled to attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code. Chapter 38 of that Code authorizes recovery of attorney's fees under enumerated

of attorney's fees for breach-of-contract claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Nowhere does Texas law impose an additional requirement that a plaintiff must separately assert a claim for attorney's fees in this context. To the contrary, "[a] claim for attorneys' fees for breach of contract is not an independent cause of action," and need not be asserted as such, because "recovery of attorneys' fees for breach of a contract is a substantive, not a procedural, issue and will be governed by the law governing the substantive issues." *Midwest Med. Supply Co. v. Wingert*, 317 S.W.3d 530, 537 (Tex. App.—Dallas 2010, no pet.).

Because Victory Medical has asserted its entitlement to attorney's fees in its pleadings, it has taken the necessary actions to preserve the right to such fees appropriate at this time. For this reason, and given Victory Medical's own admission that it asserted the claim simply as a precaution to preserve its right to fees, Victory Medical's claim for attorney's fees is dismissed.

### xii. Statutes of Limitations

BCBS invokes the statutes of limitations applicable to Victory Medical's claims as a basis for dismissal. As discussed, a court cannot dismiss a claim on an affirmative defense unless it "appears on the face of the complaint." *Garrett*, 938 F.2d at 594. BCBS concedes that the face of Victory Medical's complaint is not susceptible to

---

circumstances, including breach of contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8).

dismissal based on the respective statutes of limitations because the dates of healthcare service as to each insurance claim at issue are redacted on the relevant spreadsheets and otherwise not included in the body of the complaint. BCBS goes on to argue that, based on the unredacted copies of the relevant spreadsheets, several of the insurance claims are subject to dismissal under a statute of limitations. But those unredacted copies are not on the face of Victory Medical's complaint, and the Court is not in possession of such copies. For these reasons, on the current record, the Court cannot dismiss Victory Medical's claims based on a statute of limitations.

## V. LEAVE TO AMEND

Also before the Court is Victory Medical's motion for leave to amend the complaint. (Dkt. #240). In the two-page motion, Victory Medical generally requests leave to amend to "cure any identified deficiencies [in the complaint] within 30 days of the Court's order" should the Court dismiss any of its claims. In support of this request, Victory Medical cites a single Fifth Circuit opinion stating that leave to amend "shall be freely given when justice so requires" under Federal Rule of Civil Procedure 15(a). *See Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 179–80 (5th Cir. 1977).

BCBS opposes the motion. It notes that the case has been pending for nearly three years. In that time, the parties have undergone three rounds of dismissal briefing, including the motions at issue here, with each round requiring extensive motion practice. Further, it details the history of Victory Medical's requests for leave to amend. Victory Medical first requested leave to amend its original complaint in

response to motions to dismiss, specifically to "cure any identified deficiencies." (Dkt. #126 at 66). The court granted Victory Medical's request and provided leave to address venue issues and "cure or clarify other allegations." (Dkt. #141 at 2). After filing its first amended complaint, (Dkt. #145), Victory Medical again responded to dismissal briefing with a request to allow leave to amend. (Dkt. #178 at 14 n.20, 32) ("In the alternative, plaintiffs respectfully request leave to amend to address any venue or personal jurisdiction deficiencies found by the Court, as well as all such other and further relief to which they may be entitled."). The court granted BCBS's motions to transfer but, this time, explicitly counseled against allowing Victory Medical an additional opportunity to amend its complaint because, at the time of issuance, the case had been pending for almost two years and amendment would have unduly prejudiced BCBS in requiring another round of dismissal motions. (Dkt. #191 at 22) ("Nor should plaintiffs be permitted, as requested, a third bite at the apple to amend their complaint to properly assert venue.") (footnote omitted).

Victory Medical's request for leave to amend is denied. It is true that Rule 15(a) instructs courts to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). But courts have long recognized that "[d]enial of a motion to amend is warranted" for undue delay, repeated failure to cure deficiencies, and undue prejudice to the opposing party. *See Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 419 (5th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (same). Denial of Victory Medical's motion to amend is warranted in this case because of Victory Medical's repeated failure to cure deficiencies and of the undue

delay and undue prejudice to BCBS that would come from allowing the allegations to again change and from inviting a fourth round of dismissal motions. As BCBS points out, the case has been pending for nearly three years, during which time the parties have undergone three iterations of extensive dismissal practice. And Victory Medical has been afforded an opportunity to cure any deficiencies. The Court therefore adheres to the guidance of the transferor court and denies Victory Medical's third motion for leave to amend.

## VI. CONCLUSION

It is therefore **ORDERED** that Defendant BCBS's motions to dismiss Victory Medical's First Amended Complaint, (Dkt. #216–18, #220–22), are **GRANTED in part**, consistent with the following determinations.

It is **ORDERED** that Victory Medical's claims on Victory Medical Center Beaumont, LP and Victory Surgical Hospital East Houston, LP's accounts receivable are **DISMISSED for lack of jurisdiction**.

It is further **ORDERED** that Victory Medical's claims for failure to provide full and fair review, breach of fiduciary duty, promissory estoppel, negligent misrepresentation, unjust enrichment, for money had and received, and ERISA penalties are all **DISMISSED**.

It is further **ORDERED** that, to the extent Victory Medical's claims for exemplary damages and attorney's fees are asserted as independent causes of action, they are **DISMISSED**.

It is further **ORDERED** that Victory Medical's claim for violation of the Texas Insurance Code is **DISMISSED for lack of jurisdiction** as to insurance claims involving self-funded plans. As to all other insurance claims, Victory Medical's claim for violation of the Texas Insurance Code is **DISMISSED**.

It is further **ORDERED** that BCBS's motions to dismiss are otherwise **DENIED**.

It is further **ORDERED** that Victory Medical's motion for leave to amend, (Dkt. #240), is **DENIED**.

**So ORDERED and SIGNED this 29th day of May, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE