UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NEIL GILMOUR, TRUSTEE FOR | § | |
| THE GRANTOR TRUSTS OF | § | |
| VICTORY MEDICAL CENTER | § | |
| CRAIG RANCH, LP, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:19-CV-160-SDJ |
| | § | |
| BLUE CROSS AND BLUE SHIELD | § | |
| OF ALABAMA, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is "Plaintiffs' Motion to Reconsider Grant of Certain Motions to Dismiss (Doc. No. 267)," (Dkt. #269). In the motion, Plaintiff Neil Gilmour, in his capacity as Trustee for the Grantor Trusts of Victory Medical Center, *et al.*, requests that the Court reconsider two issues from its May 29, 2020 Order granting in part Defendants' motions to dismiss, (Dkt. #267), namely whether: (1) Plaintiffs Victory Surgical Hospital East Houston, LP, ("East Houston") and Victory Medical Beaumont, LP, ("Beaumont")[1] have standing to pursue their claims as to their patient accounts receivable; and (2) Plaintiffs adequately pleaded their misrepresentation-based claims under Federal Rule of Civil Procedure 9(b). (Dkt. #269 at 1). The Court, having considered Plaintiffs' motion, Defendants' response, Plaintiffs' reply, and the

---

[1] Throughout the proceedings in the above-captioned matter, Plaintiffs have been referred to as "Victory" or "Victory Medical." However, given the nature of the issues in dispute in this order—*e.g.*, which specific entities own the patient accounts receivable of East Houston and Beaumont—this order will refer to the specific Victory entities that are Plaintiffs in this suit by name: East Houston and Beaumont. Neil Gilmour, the third and final Plaintiff, is the Trustee representing the interests of six grantor trusts formed upon confirmation of the below-described 2015 reorganization plan.

1

relevant legal authorities and filings, concludes that the motion should be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

In 2015, six entities[2] filed for bankruptcy in a single proceeding based on the same underlying events. *See In re Victory Medical Center Mid-Cities, LP*, No. 15-42373 (Bankr. N.D. Tex. June 12, 2015). The six debtor entities alleged, *inter alia*, that multiple insurance companies, including Cigna, Aetna, United, Humana, and Blue Cross Blue Shield (BCBS), delayed or failed to pay insurance claims for healthcare services, resulting in the debtors' bankruptcy. *Id.* (Dkt. #15). Each of the six debtor entities were affiliates of East Houston and Beaumont.

The instant action is related; it also involves a dispute between Victory Medical Centers, a network of healthcare providers, and BCBS.[3] In its Complaint, Victory Medical alleges that BCBS underpaid or failed to pay insurance claims for healthcare

---

[2] The six entities are: Victory Parent Company LLC ("VPC"), Victory Medical Center Craig Ranch LP ("Craig Ranch"), Victory Medical Center Landmark LP ("Landmark"), Victory Medical Center Mid-Cities LP ("Mid-Cities"), Victory Medical Center Plano LP ("Plano"), and Victory Medical Center Southcross LP ("Southcross").

[3] "Victory Medical Centers" includes VPC, Craig Ranch, Landmark, Mid-Cities, Plano, Southcross, East Houston, and Beaumont. The Plaintiffs, however, are Neil Gilmour, as bankruptcy trustee of several Victory Medical centers, as well as East Houston and Beaumont, in their own names. Except in the background section, which summarizes the case as a whole, this order will refer to Plaintiffs as "East Houston and Beaumont" or "Plaintiffs." *See supra* n.1.

BCBS includes the Defendants listed in the First Amended Complaint, (Dkt. #145), excluding Blue Cross Blue Shield Association, Blue Cross and Blue Shield of Arizona, Inc., Blue Cross of Idaho Health Service, Inc., Blue Cross of Idaho Care Plus, Inc., Hallmark Services Corporation, Blue Cross Blue Shield of Michigan, Lifetime Healthcare, Inc., and Noridian Mutual Insurance Company due to their subsequent dismissal from the case. However, Defendants will be collectively referred to as "BCBS" or "Defendants," unless explicitly stated otherwise.

services, resulting in millions of dollars in losses, and that BCBS committed other unlawful acts in violation of duties and obligations owed to Victory Medical and its former patients.

To that end, Victory Medical has asserted numerous causes of action against BCBS under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Texas law for the alleged underpayment or nonpayment of the insurance claims. Victory Medical has also asserted claims for related wrongdoing throughout the claim-administration process, including oral misrepresentation of the terms of insurance plans, failure to adhere to procedural requirements during insurance-claim administration, and self-dealing as a result of those actions. Victory Medical brought the following state-law claims: breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, negligent misrepresentation, violation of the Texas Insurance Code, unjust enrichment, and money had and received. Finally, Victory Medical requested attorney's fees under ERISA and Texas law.

In April 2019, Defendants filed several motions to dismiss Victory Medical's First Amended Complaint, (Dkt. #216–18, #220–22). These motions, either expressly or by incorporation, sought dismissal on three main theories: lack of standing, ERISA preemption, and failure to state a claim. Specifically, and as relevant here, BCBS contended that Plaintiffs lacked standing to pursue claims as to East Houston's and Beaumont's patient accounts receivable (also known as "patient receivables" or "accounts receivable") because: (1) those receivables were property of the bankruptcy

estate; and (2) claims on East Houston's and Beaumont's patient receivables were not preserved in the bankruptcy court's reorganization plan, which specifically delineates the universe of potential future litigation. (Dkt. #217 at 15). As for Plaintiffs' misrepresentation-based claims under Texas statute and common law, BCBS argued that dismissal is warranted because Plaintiffs failed to allege these claims with the requisite specificity under Federal Rule of Civil Procedure 9(b). *See* (Dkt. #217 at 23–24, 32).

On May 29, 2020, the Court granted in part Defendant BCBS's motions to dismiss Victory Medical's First Amended Complaint, (Dkt. #216–18, #20–22), dismissing Victory Medical's claims as to East Houston's and Beaumont's patient accounts receivable for lack of standing; Victory Medical's claims alleging failure to provide full and fair review, breach of fiduciary duty, promissory estoppel, negligent misrepresentation, unjust enrichment, money had and received, and ERISA penalties; Victory Medical's claims for exemplary damages and attorney's fees (to the extent such claims were asserted as independent causes of action); and Victory Medical's claim for violation of the Texas Insurance Code. (Dkt. #267 at 61). Finally, the Court denied all other relief sought in BCBS's motions to dismiss and also denied Victory Medical's motion for leave to amend the First Amended Complaint, (Dkt. #240).

## II. Legal Standard

The parties dispute which Federal Rule of Civil Procedure governs the instant motion for reconsideration. The Federal Rules of Civil Procedure do not expressly

authorize motions for reconsideration. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). However, the Fifth Circuit has "consistently stated . . . that a motion [to reconsider] . . . that . . . challenges [a] prior judgment on the merits, will be treated as either a motion 'to alter or amend' under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." *Id.* Further, where a party requests reconsideration of a non-final, *i.e.*, interlocutory, decision of a court, such a motion will be evaluated under Rule 54(b). *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548, 564 (E.D. La. 2013) ("[T]he Fifth Circuit . . . has consistently recognized that [a motion for reconsideration] may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b). Rules 59 and 60, however, apply only to final judgments.").

Rule 59(e) permits "motion[s] to alter or amend a *judgment*" but makes no mention of altering or amending an order, decision, or proceeding other than a judgment. FED. R. CIV. P. 59(e) (emphasis added). Accordingly, courts have held, "Rule 59(e) applies only to final judgments . . . ." *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018); *see also Helena Lab'ys Corp. v. Alpha Sci. Corp.*, 483 F.Supp.2d 538, 538 n.1 (E.D. Tex. 2007) (motion was improperly filed under Rule 59(e) when no final judgment had yet been entered).

Rule 60(b) provides, in turn, that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if one of six enumerated reasons is shown. FED. R. CIV. P. 60(b). Although Rule 60(b),

by its terms, applies to a "final judgment, *order, or proceeding*," the Advisory Committee Notes clarify that the word "final," rather than "order . . . or proceeding," is operative. FED. R. CIV. P. 60(b) (emphasis added); *see also id.* advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Accordingly, the Fifth Circuit has instructed that motions for reconsideration under Rule 60, like Rule 59, are inapposite where no final judgment has been entered. *Lambert v. McMahon*, No. 06-10679, 2007 WL 713706, at *1 (5th Cir. Mar. 6, 2007) (per curiam); *James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990) ("securing the finality of judgments" underlies Rules 59 and 60); *see also, e.g.*, *Shaw v. Hardberger*, No. SA–06–CV–751, 2010 WL 276124, at *1 (W.D. Tex. Jan. 15, 2010) (citing *Sadler*, 909 F.2d at 836, for the proposition that "[a]pplication of Rules 59(e) and 60(b) requires entry of a final judgment").

Where a party moves for reconsideration of an "order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," Rule 54(b) instructs that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); *see, e.g.*, *Helena Lab'ys*, 483 F.Supp.2d at 538 n.1 (treating a motion for reconsideration of partial summary judgment brought

6

under Rule 59(e) as brought under Rule 54(b) because no final judgment had yet been entered).

In 2017, the Fifth Circuit crystallized the standard for evaluating motions for reconsideration under Rule 54(b), as compared to motions for reconsideration made under Rules 59 and 60. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336–37 (5th Cir. 2017) (per curiam) (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)) ("Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered . . . . In contrast, Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." (omission in original) (internal quotation marks omitted)). Further, under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* at 336 (quoting *Lavespere*, 910 F.2d at 185).

Here, like in *Helena Laboratories*, Plaintiffs are challenging a partial grant of a dispositive motion, as to which final judgment has not yet been entered. Specifically, Plaintiffs request reconsideration of two determinations made in the Court's May 29, 2020 Order, (Dkt. #267), which granted in part Defendants' motions to dismiss. The Court has not yet entered final judgment as to the May 29, 2020 Order. Moreover, the May 29, 2020 Order dismissed only certain claims asserted by Plaintiffs and thus did not end or close the instant action by dispositively adjudicating all claims as to

all parties. Accordingly, the May 29, 2020 Order is interlocutory, and Plaintiffs'
motion for reconsideration, (Dkt. #269), is properly considered under Rule 54(b).

### III. DISCUSSION

**A. Whether East Houston and Beaumont Lack Standing To Pursue Claims as to their Patient Accounts Receivable**

Patient accounts receivable, also known as "patient receivables" or "accounts
receivable," are amounts owed to a healthcare provider by its patients or third parties
for healthcare services performed. UNIV. OF CAL., MED. CTRS.: PATIENT ACCOUNTS
RECEIVABLE, ACCOUNTING MANUAL 3 ¶ 1 (2006); *see also, e.g.*, *In re Health Diagnostics
Lab'y, Inc.*, 571 B.R. 182, 187–88 (Bankr. E.D. Va. 2017). Absent a transfer of
ownership, *i.e.*, by sale or assignment, patient receivables belong to the medical
centers that rendered those healthcare services. *See, e.g.*, *Washington v. Key Health
Med. Sols., Inc.*, LA CV12-08584 JAK (SSx), 2012 WL 12892691, at *1 (C.D. Cal. Dec.
21, 2012) (medical providers owned accounts receivable from patients that received
medical services until the providers assigned those receivables to the defendant).

As medical centers, East Houston and Beaumont provide healthcare services
to their patients. Absent transfer of ownership, receivables for said services would
remain the property of East Houston and Beaumont, thus conferring standing to
pursue claims as to such receivables. *See* (Dkt. #267 at 9).[4] Plaintiffs allege, and

---

[4] The Court, in its May 29, 2020 Order, held that the bankruptcy estate owned East
Houston's and Beaumont's accounts receivable, thus depriving East Houston and Beaumont
of standing to pursue claims as to those accounts receivable. (Dkt. #267 at 9–11). Plaintiffs'
standing to pursue claims as to their patient accounts receivable are challenged only on the
basis of patient-receivable ownership. It is self-evident that if East Houston and Beaumont
own their patient accounts receivable, they have standing to pursue claims as to these
receivables.

BCBS does not dispute, that East Houston and Beaumont never assigned ownership of their patient accounts receivable. (Dkt. #269 at 10) ("No such assignment ever occurred, nor have defendants ever purported to submit proof of any such assignment."); *see generally* (Dkt. #274) (failing to offer any rebuttal to Plaintiffs' argument as to assignment).

However, BCBS nevertheless contends that the patient receivables in question belonged not to East Houston and Beaumont but to the bankruptcy estate managing the 2015 restructuring of the six debtor entities. *See* (Dkt. #61 at 7) (relying on one document found in the bankruptcy record: *In re Victory Medical Center Mid-Cities, LP, et al.*, No. 15-42373 (Bankr. N.D. Tex., Feb. 12, 2016) (Dkt. #777 at 18)). This, BCBS contends, is because East Houston and Beaumont "were sold during the pendency of the bankruptcy and Victory Debtors' bankruptcy estate owned Beaumont's and East Houston's accounts receivable before the confirmation of the Reorganization plan." (Dkt. #61 at 7) (citing same).[5]

The Court, in its May 29, 2020 Order, also concluded that VPC, and, by proxy, the bankruptcy estate, owned East Houston's and Beaumont's accounts receivable prior to the confirmation of the reorganization plan, finding as follows:

> The bankruptcy record indicates that Beaumont and East Houston's accounts receivable were a part of the bankruptcy estate. Victory Parent, a bankruptcy debtor, filed several "schedules" as a part of the bankruptcy proceeding's disclosure requirements. "Schedule B" directs a bankruptcy debtor to "list all personal property of the debtor of

---

[5] In Plaintiffs' motion to reconsider, non-Debtors East Houston and Beaumont concede that they sold "substantially all of their assets" during the debtors' bankruptcy proceedings but specifically note that they did not sell their patient receivables. (Dkt. #269 at 2). When ruling on the Defendants' various dismissal motions, (Dkt. #267), however, the Court did not have the benefit of Plaintiffs' briefing on the issue of patient-receivable ownership.

whatever kind." *See In re Victory Medical Center Mid-Cities, LP*, 4:15-BK-42384 (Bankr. N.D. Tex. June 12, 2015) (Dkt. #18 at 3). In the section entitled "accounts receivable," Victory Parent listed ownership of several "affiliates receivable," *which specifically included East Houston and Beaumont's accounts receivable and the respective balances due*. *Id.* at 8.

Victory Medical does not directly contest the validity of that disclosure. Instead, Victory Medical says that BCBS has confused Victory Parent's economic interest in Beaumont and East Houston themselves for ownership of their accounts receivable. The evidence does not support Victory Medical's view. Schedule B provides separate sections for disclosing ownership of accounts receivable and ownership of interests in businesses. *Id.* at 6. Victory Parent disclosed its ownership of Beaumont and East Houston's accounts receivable in the former, *id.*, then disclosed its ownership interest in the medical centers themselves in the latter, *id.* at 7. BCBS grounds its arguments on the accounts-receivable disclosure. Victory Medical attempts to conflate the two by suggesting that Victory Medical's ownership of the accounts receivable is merely a by-product of its equity ownership of Beaumont and East Houston. As explained, that position is belied by the disclosures, and Victory Medical offers no other evidence or persuasive authority to support its view.

(Dkt. #267 at 10–11) (emphasis added).

Since that holding, however, Victory Medical has directly contested the significance of VPC's aforementioned disclosure and has offered other evidence to support its view, namely in its motion to reconsider, (Dkt. #269). That evidence, summarized in relevant part below, supports the following conclusions.

First, notwithstanding VPC's substantial economic interest in East Houston and Beaumont generally,[6] the evidence before the Court does not reflect that VPC

---

[6] One page of the VPC schedule shows that VPC's relationship to East Houston and Beaumont is that of a Limited Partner bearing an 82.2% ownership interest and a 46.25% ownership interest, respectively. *In re Victory Parent Co., LLC*, No. 15-42384 (E.D. Tex. July 14, 2015) (Dkt. #18 at 7). The fact that VPC has such an economic interest in East Houston and Beaumont generally is neither in dispute nor inconsistent with the Court's

owns or owned East Houston's and Beaumont's patient accounts receivable. In Schedule B of the bankruptcy record—on which the Court previously relied in reaching its conclusion as to patient-receivable ownership—VPC listed "Affiliates receivable" owed to VPC by East Houston and Beaumont as assets within the "Accounts receivable" section. *In re Victory Parent Co., LLC*, No. 15-42384 (E.D. Tex. July 14, 2015) (Dkt. #18 at 6) (citing (Dkt. #18 at 8) (indicating that non-debtor affiliates East Houston and Beaumont owed balances to VPC of $13,265,927.19 and $12,469,370.98, respectively)). However, at least as used in the bankruptcy record, the term "affiliates receivable" does not mean "accounts receivable." Rather, the former denotes intercompany debts owed to VPC by its hospital affiliates, including East Houston and Beaumont, while the latter means debts that patients or third parties owe to the hospitals for services rendered. Thus, Schedule B shows only that VPC—and, by proxy, the bankruptcy estate—owned *affiliates receivable* associated with East Houston and Beaumont, not the *patient accounts receivable* of East Houston and Beaumont.

This is clear for several reasons. First, and most importantly, the VPC schedule listing "Affiliates receivable," No. 15-42384 (Dkt. #18 at 8), and a separate chart from the bankruptcy record listing "Intercompany Transfer Balances," No. 15-42384 (Dkt. #17 at 40), reflect precisely the same values as one another, down to the decimal

May 29, 2020, holding. The sole issue here is whether VPC owns East Houston's and Beaumont's patient accounts receivable.

point.[7] From this comparison, it is clear that the term "affiliates receivable" is synonymous with "intercompany transfer balances." And further inquiry makes clear that "intercompany transfer balances" does not mean "patient accounts receivable." For instance, Landmark disclosed that its patient accounts receivable ranged from $6,771,786.00 to $30,947,396.00 in value, while its "affiliates receivable" totaled only $2,616,661.81. *In re Victory Medical Center Landmark, LP*, No. 15-42382 (Bankr. N.D. Tex. July 13, 2015) (Dkt. #13 at 6).

Further, two additional documents in the bankruptcy record tend to show that East Houston and Beaumont have retained ownership over their patient accounts receivable. First, one page of the schedule provides as follows:

> Outstanding receivables *owed to* Beaumont which may be collectible are estimated between $1.3 million and $5.5 million . . . . As these receivables are collected, they will be *utilized first to pay down* the HPRH Note and any remaining creditors of Beaumont. Once these obligations have been paid, any remaining receivables collected will be paid to Victory Parent as a source of funding under the Plan.

No. 15-42373 (Dkt. #777 at 18) (emphasis added). Similarly, as to East Houston, the Schedule provides: "Outstanding receivables *owed East* which may be collectible are estimated between $280,000 and $1.1 million . . . . As these receivables are collected, they will be utilized to pay outstanding obligations owed to East creditors." *Id.* (emphasis added). This document is not definite proof that East Houston and Beaumont have actually retained ownership over their patient accounts receivable. Rather, it casts doubt on the Court's prior conclusion that said receivables belong to

---

[7] Specifically, the "Affiliates receivable" and "Intercompany Transfer Balances" associated with East Houston are both $13,265,927.19. For Beaumont, the "Affiliates receivable" and "Intercompany Transfer Balances" both equal $12,469,370.98.

the bankruptcy estate. For this reason, the above-described document—when taken with other evidence in this order from the bankruptcy record—tends to persuade the Court to vacate its holding as to ownership of East Houston's and Beaumont's patient accounts receivable.

Second, one month after the filing of the VPC Schedule, VPC informed the bankruptcy court that "Beaumont is selling substantially all of its assets to The Medical Center of Southeast Texas, LP, pursuant to a proposed Amended and Restated Asset Purchase Agreement." *In re Victory Medical Center Mid-Cities, LP*, No. 15-42373 (Bankr. N.D. Tex. Aug. 21, 2015) (Dkt. #372 at 2). As shown in the proposed asset purchase agreement, Beaumont (defined on page two as the "Seller") expressly retained ownership of its accounts receivable. *In re Victory Medical Center Mid-Cities, LP et al.*, No. 15-42373 (Bankr. N.D. Tex. Aug. 21, 2015) (Dkt. #372-1 at 2, 7). If VPC in fact already owned Beaumont's accounts receivable, Beaumont could neither own nor expressly reserve retention of those accounts receivable.

In view of the foregoing, the Court erred in concluding that "Victory Parent listed ownership of several 'affiliates receivable,' *which specifically included East Houston and Beaumont's accounts receivable* and the respective balances due," (Dkt. #269 at 10–11) (emphasis added). Given the information before the Court, including the bankruptcy record, it appears that VPC owns only affiliates receivable as to East Houston and Beaumont and not East Houston's and Beaumont's patient accounts receivable.

And, under the operative Rule 54(b) standard for the Court's evaluating Plaintiffs' motion to reconsider, it does not matter why the misinterpretation occurred or what either party's motive was in crafting arguments before the Court, assuming the arguments were made in good faith. Under Rule 54(b), "the trial court is free to reconsider and reverse its decision *for any reason it deems sufficient*, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (quoting *Lavespere*, 910 F.2d at 185) (emphasis added). Here, Plaintiffs correctly observe that the key document relied on for the proposition that patient receivables of East Houston and Beaumont belonged to the bankruptcy estate actually refers to affiliates receivable, or "intercompany transfer balances," which are different in kind from patient receivables. Thus, the Court finds unavailing Defendants' argument that "Plaintiffs' Motion to Reconsider the dismissal of claims on Beaumont's and East's accounts receivable should be denied because Plaintiffs cannot now offer evidence that could have, and should have, been raised during the motion to dismiss briefing." (Dkt. #274 at 5).

In view of the foregoing, the Court's dismissal for lack of standing in its May 29, 2020 Order, (Dkt. #267 at 9–11), of Plaintiffs' claims on East Houston's and Beaumont's patient accounts receivable is hereby **VACATED**.[8]  Plaintiffs therefore

---

[8] Because the Court hereby concludes that these patient accounts receivable were not part of the bankruptcy estate, the Court vacates its holding that, and need not reconsider whether, the bankruptcy estate failed to adequately preserve claims as to these accounts receivable.

have standing to pursue claims as to East Houston's and Beaumont's patient accounts receivable.

## B. Whether Plaintiffs Adequately Pleaded Their Misrepresentation-Based Claims Under Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for claims of fraud or mistake.[9] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Specifically, under Rule 9(b), a party alleging fraud or mistake "*must* state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) (emphasis added). Given the plain meaning of the text, the Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)), *cert. denied,* 558 U.S. 873, 130 S.Ct. 199, 175 L.Ed.2d 125 (2009).

Other courts in this district have held that, where the fraud alleged was complex and occurred over an extended period of time, the requirements of Rule 9(b) are less stringently applied. *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) (citation omitted); *see also United States ex rel. Thompson v.*

---

[9] In their motion to reconsider, Plaintiffs do not challenge the Court's conclusion from its May 29, 2020 Order that Rule 9(b) applies to both the negligent misrepresentation and Texas Insurance Code claims because both arise out of allegations of fraudulent misrepresentation by Defendants. (Dkt. #267 at 47–48); *see generally* (Dkt. #269).

*Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1039 (S.D. Tex. 1998) ("[W]here allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required to satisfy the pleading requirements of Rule 9(b)."). However, this relaxation of Rule 9(b)'s heightened pleading requirement applies only in the context of the False Claims Act ("FCA") and government-enforcement actions. *See, e.g.*, *United States ex rel. Hebert v. Dizney*, 295 F.App'x. 717 (5th Cir. 2008); *Johnson*, 183 F.R.D. at 206; *U.S. Commodity Futures Trading Comm'n v. M25 Invs. Inc.*, No. 3:09–CV–1831–M, 2010 WL 769367, at *2 (N.D. Tex. Mar. 6, 2010); *SEC v. Sharp Cap., Inc.*, No. 3:98–CV–2792–G, 1999 WL 242691, at *2 (N.D. Tex. Apr. 16, 1999).[10]

In fact, the Fifth Circuit has made clear that plaintiffs alleging common-law fraud—even where the alleged fraudulent scheme is complex—are not entitled to the same relaxation of Rule 9(b) as plaintiffs suing under the False Claims Act. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188–89 (5th Cir. 2009). This is because common-law fraud—unlike the False Claims Act—contains the elements of reliance and damages, which are "intertwined with" and "demand[] the specifics of the false representation." *Id.* That is, "[w]ithout the precise contents of the

---

[10] Courts have cited this principle in non-FCA or non-government-enforcement matters. *See, e.g.*, *Burford v. Cargill, Inc.*, No. 05–0283, 2011 WL 4382124, at *12 n.7 (W.D. La. Sept. 20, 2011); *Boutain v. Radiator Specialty Co.*, No. 11–1907, 2011 WL 6130754, at *3 (E.D. La. Dec. 8, 2011); *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, 789 F.Supp. 364, 366 (D. Kan. 1992) ("[W]here allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required to satisfy the pleading requirements."). However, Plaintiffs have not presented, and the Court is not aware of, any binding precedent outside of the FCA and government-enforcement contexts where courts have actually relaxed Rule 9(b)'s standard. And, given the plain meaning of the text of Rule 9(b), the Court is not persuaded to apply the relaxed standard here.

misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment." *Id.* Thus, common-law fraud's elements of reliance and damages heighten the need to plead with particularity the misrepresentation itself. *See id.* For this reason, courts have held that Rule 9(b)'s heightened pleading requirement for fraud should be relaxed in the context of government-enforcement actions, where reliance is immaterial. *See, e.g., M25 Invs. Inc.*, 2010 WL 769367, at *2; *Sharp*, 1999 WL 242691, at *2.

Here, Plaintiffs allege negligent misrepresentation under Texas law, which contains the elements of reliance and damages. (Dkt. #267 at 48). Plaintiffs make allegations of fraudulent conduct that are numerous; in fact, Plaintiffs allege misrepresentation in connection with 777 different transactions between BCBS agents and Victory Medical's BCBS-insured former patients. However, as Defendants observe, "any 'complexity' attendant to this case" results not from the nature of Defendants' allegedly fraudulent scheme but from the sheer volume of claims presented, comprising "one case by 9 Plaintiffs against 68 Defendants involving 777 alleged misrepresentations . . . ." (Dkt. #274 at 13). Certainly, Plaintiffs cannot attain a relaxed pleading standard merely by filing a more voluminous complaint. And, regardless of whether numerosity is synonymous with, a substitute for, or sufficient to establish complexity, *cf. Johnson*, 183 F.R.D. at 206; *Thompson*, 20 F.Supp.2d at 1039, Plaintiffs allege common-law fraud, where, as shown above, the demand for specifics of the alleged false representations is essential. Thus, Plaintiffs fail to adequately allege their negligent-misrepresentation claims, and the

Court correctly held that "Victory Medical's factual allegations fail to satisfy Rule 9(b)'s heightened pleading requirements" for failure to provide the "who" and "when" components of Rule 9(b)'s heightened pleading requirements. (Dkt. #267 at 48–49).

Moreover, even if, *arguendo*, the Court were to adopt Plaintiffs' proposed relaxation of Rule 9(b) for the negligent-misrepresentation claims, Plaintiffs still failed to plead enough claims with particularity to satisfy even the relaxed standard. Precisely how many concrete, actual instances of misrepresentation plaintiffs must allege remains unclear. *Hebert*, 295 F.App'x at 723 ("[T]he allegedly great extent and complexity of a fraudulent scheme does not excuse a failure to plead at least one false claim with the requisite specificity."); *but see Grubbs*, 565 F.3d at 190 (holding that, at least in the FCA context, a complaint can potentially survive even without alleging details on an actually submitted false claim).[11] However, it is clear that courts' relaxation of Rule 9(b) pertains to the volume of cases that must be alleged with particularity and not to the degree of particularity alleged. Thus, even if the Court were to apply the generous assumption that, under a relaxed Rule 9(b) standard, only one instance of misrepresentation must be pleaded with particularity, Plaintiffs would still fail.

Plaintiffs purport to identify three instances of misrepresentations alleged with particularity. (Dkt. #269 at 14). Yet, even these allegations—which contain, by Plaintiffs' own admission, Plaintiffs' most precise assertions of negligent

---

[11] Both *Hebert* and *Grubbs* are FCA cases. The parties have not presented, nor is the Court aware of, case law clarifying precisely how many claims must be particularly alleged under Rule 9(b)'s relaxed standard in non-FCA cases.

misrepresentation—fail to allege particularly the "who" associated with said misrepresentations. For instance, Plaintiffs allege that "Defendants misrepresented to its members/subscribers (*i.e.*, the BCBS Subscribers) and the assignee thereof, Victory Medical, that the methods used to calculate benefits were based on valid data or legitimate reasons." (Dkt. #145 ¶¶ 163–66); *see also* (Dkt. #145 ¶¶ 184–92). Even here, where Plaintiffs allege the date of the alleged misrepresentations, the precise "who" is absent. Plaintiffs rely only on FCA cases for the proposition that "in terms of the 'who,' the Fifth Circuit has suggested that, at least in a *qui tam* case, the identity of the corporate actor – rather than a specific individual – would meet particularity requirements." (Dkt. #269 at 14 n. 22) (quotations omitted). As described above, FCA cases are largely, if not wholly, inapposite in ascertaining the scope of Rule 9(b)'s heightened pleading requirements in common-law fraud cases. Thus, even Plaintiffs' most specific allegations of misrepresentation do not establish the "who" as required to satisfy Rule 9(b).

Finally, the Court considers whether Plaintiffs adequately alleged BCBS's violations of the Texas Insurance Code. Plaintiffs' claims as to violations of the Texas Insurance Code arise out of the same alleged misrepresentations by BCBS entities. Accordingly, in its May 29, 2020 Order, the Court held that "Victory Medical's claim for violation of the Texas Insurance Code suffers the same pleading deficiencies as its claim for negligent misrepresentation," *i.e.*, failing to "allege any additional facts regarding who made the misrepresentations at issue and when those misrepresentations were made." (Dkt. #267 at 51). The two provisions under which

19

Plaintiffs sue—Texas Insurance Code §§ 541.051(1) and 541.060(a)(1)—do not involve the elements of reliance and damages.

First, Plaintiffs' misrepresentation-based claims under the Texas Insurance Code do not enjoy the benefit of a relaxed Rule 9(b) pleading standard. Although the two Texas Insurance Code provisions that Plaintiffs invoke are devoid of the elements of reliance or damages, Plaintiffs have failed to present, and the Court is not aware of, any cases relaxing Rule 9(b) for misrepresentations in violation of the Insurance Code. As explained above, the plain text of Rule 9(b) counsels in favor of the Rule's strict application. Consequently, the Fifth Circuit instructs that, outside of the FCA and government-enforcement contexts, Rule 9(b)'s heightened pleading standard should be applied "with 'bite' and 'without apology.'" *Grubbs*, 565 F.3d at 190; *see supra* at 16. Second, as described above, even Plaintiffs' most precise allegations of misrepresentation, *see* (Dkt. #145 ¶¶ 163–66), are insufficient to satisfy Rule 9(b)'s particularity requirement, particularly the "who" component. If Plaintiffs have failed to plead with particularity even one instance of misrepresentation, they cannot satisfy even the relaxed Rule 9(b) standard.

Finally, the Court's alternative basis for dismissal articulated in the May 29, 2020 Order—holding that Plaintiffs offer only conclusory allegations that BCBS knowingly made representations—remains sound. While scienter may be alleged generally under Rule 9(b), general allegations of scienter require that Plaintiffs "set forth *specific facts* supporting an inference of fraud." *Dorsey*, 540 F.3d at 339. As the May 29, 2020 Order conclusively shows, Plaintiffs failed to plead such specific facts.

(Dkt. #267 at 51–52).[12] Accordingly, Plaintiffs have inadequately pleaded misrepresentations in violation of the Texas Insurance Code, and the Court correctly dismissed those claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that: (1) reconsideration of the Court's May 29, 2020 Memorandum Opinion and Order, (Dkt. #267), is subject to Rule 54(b) and not Rules 59 or 60; (2) the bankruptcy record does not deprive East Houston and Beaumont of standing to pursue claims as to their patient accounts receivable, and, thus, the Court's prior dismissal for lack of standing of East Houston's and Beaumont's claims as to their patient accounts receivable is **VACATED**; and (3) Plaintiffs failed to adequately allege their misrepresentation-based claims because Plaintiffs' claims of negligent misrepresentation and violation of the Texas Insurance Code are subject to and failed to satisfy Rule 9(b)'s heightened pleading requirement.

It is therefore **ORDERED** that "Plaintiffs' Motion to Reconsider Grant of Certain Motions to Dismiss (Doc. No. 267)," (Dkt. #269), is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that the Court's May 29, 2020 Order, (Dkt. #267), is **VACATED in part**. Specifically, the Court's holding that the bankruptcy reorganization plan forecloses VPC's standing to bring claims on East Houston's and

---

[12] Because Plaintiffs, have inadequately pleaded a violation of Chapter 541 under Rule 9(b), it is immaterial whether, for the purpose of calculating damages, Plaintiffs adequately alleged knowledge. *See* (Dkt. #269 at 15).

Beaumont's accounts receivable, (Dkt. #267 at 9–11), is **VACATED**. Plaintiffs have standing to pursue claims as to their patient accounts receivable.

It is further **ORDERED** that Plaintiffs' motion for reconsideration as to its misrepresentation-based claims, (Dkt. #269 at 12–15), is **DENIED**.

**So ORDERED and SIGNED this 30th day of March, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

22